(769 P.2d 678)

No. 61,776

In the Matter of the Marriage of ROGER HARRISON, *Appellee*, and PAMELA L. HARRISON, *Appellant*.

—

Opinion filed March 3, 1989.

*John C. Tillotson*, of Murray & Tillotson, Chartered, of Leavenworth, for the appellant.

*Robert D. Beall*, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, for the appellee.

Before BRISCOE, P.J., LARSON, J., and DAVID F. BREWSTER, District Judge, assigned.

BREWSTER, J.: This is a divorce proceeding in which the respondent Pamela Harrison appeals the trial court's division of property. As a result, we return to an issue last addressed by this court in *Grant v. Grant*, 9 Kan. App. 2d 671, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984): Whether military retirement pay is marital property subject to division in a divorce proceeding.

The parties were first married in January 1971 and have one minor child who now lives with her mother in Kentucky. On July 1, 1982, the parties were divorced, but they resumed living together shortly thereafter and were remarried on December 7, 1982. Petitioner Roger Harrison had been in the military service for 18 years and is currently stationed at Fort Leavenworth, Kansas. Pamela was a civilian employee of the United States Army, employed as an education specialist. The evidence at trial disclosed that, when Roger has accumulated 20 years of service, he becomes eligible upon retirement for military retirement benefits in an amount equal to one-half of his active duty base pay. Pamela's potential retirement benefits from all sources are not nearly as substantial as Roger's potential benefits.

Pamela asked the court to award her one-half of 80 percent of Roger's retirement benefits, payable as and when Roger re-

ceived those benefits. At trial, Pamela offered testimony of a professor of finance as an expert witness, who testified that Roger's future retirement benefits had a present value of $267,132. The witness calculated the present value of the benefits on the assumption that Roger would retain his present rank and retire after 20 years of service, receiving one-half of his active duty base pay. Based upon actuarial tables, Roger's statistical life expectancy was multiplied by the monthly retirement benefit and then adjusted for inflation at the historic rate over a specified period. The resulting figure was then discounted by a historic interest rate figure.

On November 24, 1987, the trial court entered its decision granting the second divorce on the ground of incompatibility and dividing the marital assets and apportioning the liabilities. The trial court made no specific findings as to the value of the marital property but there was no serious dispute in that regard except as to any present value of Roger's unvested military retirement benefits. Included in the decision was a provision assigning to Roger all of his future military retirement benefits.

Pamela tacitly agrees the property division is not particularly disproportionate if the military retirement benefits are not considered. However, if the value of the benefits is considered, the property division is disproportionate. Pamela contends the trial court abused its discretion in not considering Roger's potential future stream of retirement pay as marital property and in failing to award her an equitable portion thereof, or, in the alternative, in not considering the retirement benefits as an economic resource in determining an appropriate award of maintenance.

In *Grant*, the husband had retired from the military and was receiving monthly military retirement payments. In determining whether these monthly retirement payments were marital property subject to division, we held that military retirement pay has none of the qualities commonly attributable to marital assets such as cash surrender value, loan value, redemption value, lump sum value, or a value realizable after the death of the retiree. Since military retirement pay has none of the qualities commonly attributable to marital assets, we held such retirement benefits have no lump sum present determinable value qualifying them as a marital asset subject to division. While we did acknowledge that military retirement pay could be considered as

a source of income when determining child support and maintenance, we concluded in *Grant* that military retirement pay was nothing more than a future stream of income which would cease at the serviceman's death.

Since *Grant* was decided in 1984, the legislature has amended K.S.A. 23-201 to add a specific reference to military retirement pay:

"(b) All property owned by married persons, *including the present value of any vested or unvested military retirement pay*, . . . shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto." (Emphasis added.)

While this state of affairs appears to present an irreconcilable conflict, the solution is as simple as this: The legislature has now stated that military retirement pay has a present value, and that the present value of military retirement pay, vested or unvested, becomes marital property at the time of the commencement of the action for divorce, separate maintenance, or annulment. The statute requires the courts to determine the extent of the vested interest each spouse may have in all marital property and provide for final disposition of that property. Although military retirement pay may not have the qualities which courts have commonly attributed to marital property, the courts of this state are bound by the legislature's inclusion of vested or unvested military retirement pay within its description of marital property with present value.

Placing a present value on retirement benefits may be difficult. Still, difficulties in valuation are not an insurmountable barrier to including the benefits, whether matured, vested, or nonvested, as marital property. Trial courts have broad discretion to fashion an equitable division of the parties' property in a divorce proceeding. *Clark v. Clark*, 236 Kan. 703, 707, 696 P.2d 1386 (1985). Therefore, we hold that military retirement pay, whether vested or unvested, is marital property subject to division upon the dissolution of the marriage.

Since this opinion represents a change in the law of this state, it is necessary to remand this case to the trial court with instructions to consider an equitable division of all of the marital assets,

including Roger's unvested military retirement pay. As guidance to the trial court, some additional comments are warranted. In general, there are a number of methods of valuing a retirement pension. Two of the more frequent methods used by the courts of various jurisdictions in making valuation determinations in this often complicated and speculative field have come to be known as the (1) present cash value method and (2) reserve jurisdiction method. See *In re Marriage of Gallo*, 752 P.2d 47 (Colo. 1988).

Under the present cash value method, a present value is placed on the retirement plan as of the date of divorce by first using actuarial tables to determine the life expectancy of the military spouse. That figure is then multiplied by the current or future retirement benefits (or formula for determining the same) to arrive at a gross benefit figure, which is then discounted to present value to reflect various factors, including mortality, interest, inflation, and tax assumptions. The present cash value method may be preferred if the military spouse's retirement benefits can be valued accurately and if the marital estate includes sufficient equivalent property available to the nonmilitary spouse to offset the award of the benefits to the military spouse. This last element is a crucial factor in military retirement benefit cases where, as in the instant case, the benefits represent the parties' greatest economic asset.

The reserve jurisdiction method is often appropriate where the difficulties of placing a present value on the benefits, the needs of the parties, or the inability to set off a certain amount of property against the size of the benefits militate against using the present cash value method. Under this approach, the trial court may, in its discretion, determine the formula for division at the time of the decree but delay the actual distribution until payments are received, retaining jurisdiction to award the appropriate percentage of the marital interest in each payment if, as, and when it is paid. This method has the effect of equally apportioning any risk of forfeiture upon both parties. Under this method, the benefits can be equitably divided between the parties without requiring one spouse to pay out a portion of monies not yet received. A liability of this approach, as applied in other jurisdictions, is that continued supervision by the court is often required. Further resort to the courts can be ameliorated, however, by determining, at the time of the divorce decree, a

formula or percentage by which the payments should be divided at such time as they are received.

The trial courts, of course, may consider other methods of valuation and other methods of making disposition of the marital assets of the parties which might better address the interests and needs of the parties. Diligent and innovative counsel may develop other methods of solving the problems inherent in this difficult issue. Our intent is not to create an inflexible rule of property valuation, but rather to provide trial courts with alternative methodologies that may prove effective. After all, a rule directed to the disposition of property in a divorce proceeding can only be as sound as the economic reality which it attempts to service. The key to an equitable distribution of marital assets is fairness, not mathematical precision.

Reversed and remanded for further proceedings.