No. 64,945

In The Matter of the Marriage of DIANE E. SADECKI, *Appellant*,
and RAYMOND M. SADECKI, *Appellee*.

(825 P.2d 108)

Opinion filed January 17, 1992.

*John P. Gerstle*, of Gerstle and Wood, of Overland Park, argued the cause, and *Benjamin C. Wood*, of the same firm, was on the brief for appellant.

*James P. Lugar*, of Lugar, Harris & Sheeley, of Kansas City, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Diane E. Sadecki, the original petitioner in an action for divorce from Raymond M. Sadecki, timely appealed from the division of property ordered by the trial court. The Court of Appeals, in a two-to-one decision, affirmed the trial court in an unpublished opinion, *In re Marriage of Sadecki*, No. 64,945 filed April 19, 1991. We granted a petition for review filed by Diane and now affirm the decisions of the trial court and the Court of Appeals.

The appellant contends that the trial court erred in (1) making a grossly inequitable division of property; (2) failing to consider Raymond's retirement pension as a marital asset subject to di-

vision; and (3) failing to consider Raymond's future earning capacity. The facts will be set forth in some detail.

Diane and Raymond Sadecki were married in 1960. Diane filed for divorce in February of 1989. The trial court granted the divorce October 4, 1989. At the time of the marriage, Diane was 18 years old and Raymond was 19 years old. Raymond had been a major league professional baseball player for 2 years and continued to play professional baseball for the next 18 years of their marriage. The Sadeckis had two children, one born in 1966, the other in 1970.

During the first 20 years of their marriage, Diane had no significant employment outside the home and spent those years of the marriage as a housewife and full-time mother of two children. In 1981, Diane went to work full time for Gerber Products Company.

Raymond retired from baseball in 1977, and in 1986, at the earliest possible opportunity, exercised his right to begin drawing retirement benefits from the professional baseball retirement program. The retirement program is a non-contributory, vested, matured pension which at the time of the divorce paid Raymond $1,919 per month. Although he will continue to receive monthly payments for life, the amount of the payment apparently fluctuates, depending upon market conditions and the economy.

At the divorce hearing, both parties testified about their marital assets and their respective financial conditions. Raymond testified to his ownership of a limited partnership interest in a fast food operation known as "BK's." He valued the interest at $31,750 and stated his income from the partnership was $13,231 in 1988. No evidence was presented by either party as to the present cash value of Raymond's baseball retirement benefits. With the exception of their household goods, the parties were generally in agreement about the value of their other property. Diane thought the household goods were worth only $1,500 while Raymond placed a value of $5,000 on them.

At the time of the hearing, Diane was earning approximately $30,000 per year from her employment at Gerber Products Company. Raymond was unemployed and had last worked for Southwestern Bell selling mobile phones. He testified that he had "been active in the job market," but had failed to secure new

employment. Overall, Raymond was unemployed for approximately 17 months of the 2-year period preceding the divorce hearing. In 1988, Raymond's adjusted gross income was approximately $40,269, which included $4,700 from the sales job with Southwestern Bell, and the balance in passive income from the baseball retirement plan and the limited partnership. In 1986 he had earned $33,480 and in 1987 he earned $23,000. His employment with Southwestern Bell was terminated in September 1987.

After hearing all of the evidence, the trial court divided the property by awarding Diane the residence valued at $65,000, the bulk of the household goods, her 401K retirement plan with Gerber Products Company, her IRA account, and a checking account of approximately $1,000. In addition, she was granted a money judgment against Raymond of $8,500. The total value of the property and judgment exceeded $90,000.

The trial court awarded a small portion of the household goods to Raymond, along with his 1986 Chrysler automobile and his limited partnership interest in "BK's," all of which had a total value of approximately $40,000. In addition, Raymond was ordered to pay all of the indebtedness of the parties, including two mortgages on the residence and one on the automobile, in the total amount of $24,050, as well as the judgment granted to Diane. The net value of the property granted to Raymond, after deduction of the indebtedness and judgment, was $7,950.

Before turning to the issues raised by the appellant, we deem it appropriate to review certain basic principles and statutes applicable to a claim of an inequitable property division in a divorce case.

K.S.A. 1990 Supp. 60-1610(b) governs the division of property in divorce proceedings and provides in pertinent part:

"(1) *Division of Property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts, by: (A) a division of the property in kind; (B) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum; or (C) ordering a sale of the property, under conditions prescribed by the court, and dividing the proceeds of the sale. In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property

owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property."

"Marital property" is defined in K.S.A. 23-201(b) as follows:

"All property owned by married persons, including the present value of any vested or unvested military retirement pay, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

The rules of appellate review governing the division of property in a divorce proceeding are well settled:

" ' "In a divorce action the district court is vested with broad discretion in adjusting property rights, and its exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." [Citations omitted.] "[D]iscretion is abused only where no reasonable [person] would take the view adopted by the trial court. If reasonable [persons] could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion." ' " *Reich v. Reich*, 235 Kan. 339, 341, 680 P.2d 545 (1984) (quoting *Bohl v. Bohl*, 232 Kan. 557, 561, 657 P.2d 1106 (1983).

In *Stayton v. Stayton*, 211 Kan. 560, 561-62, 506 P.2d 1172 (1973), we stated:

"The discretion of the trial court is, of course, subject to appellate review and correction where there has been a clear-cut abuse of discretion. In its exercise a judge may not be arbitrary or whimsical. We have held on a number of occasions that abuse of judicial discretion, as that term is ordinarily used, implied not merely an error in judgment, but perversity of will, passion or moral delinquency when such discretion is exercised to an end or purpose not justified by and clearly against, reason and evidence."

Further, the trial court in its exercise of discretion in dividing the property is not required to divide the property on a 50-50 basis. In *Larue v. Larue*, 216 Kan. 242, 250, 531 P.2d 84 (1975), this court stated: "Nowhere in any of our decisions is it suggested

that a division of all of the property of the parties must be an equal division in order to be just and reasonable . . . ."

Diane, in asserting that the property division constitutes an abuse of discretion on the part of the trial court, makes several arguments which are commingled in her brief. However, her principal allegation is that the court erred in not considering the baseball retirement plan as a marital asset subject to division. She contends that it was only considered as an income item in comparing the relative incomes of the parties and not as a marital asset. Raymond, on the other hand, asserts that there was no evidence of the value of the retirement plan and that the trial court did consider the plan as a marital asset.

At the outset, it should be noted that if Diane's argument is correct then she received assets having a net value in excess of $90,000, while Raymond received assets having a net value of less than $8,000. Such a construction of the trial court's judgment results in Diane receiving over 11 times more in net marital assets than Raymond, which arguably Raymond might view as an abuse of discretion, but certainly not Diane. Diane's argument is unrealistic when the entire record, such as it is, and the statements of the court are considered in their entirety. A review of that record reveals both the limited partnership interest in "BK's" and the baseball retirement plan were considered as assets.

Diane bases her argument primarily on certain isolated statements of the trial court where it referred to the retirement benefits as income rather than as a marital asset. However, such reliance is based upon statements taken out of context. In stating its findings and orders on the division of property, the court went to great lengths to describe each asset and debt of the parties and in doing so stated: "The husband is also set aside his baseball retirement income free and clear of any claim of the wife." It is apparently this statement that Diane seizes upon when she claims in her brief that, "At the time of the original judgment, the Court merely referred to it [the baseball retirement plan] as 'income.' " However, she chooses to ignore the court's closing words wherein it stated:

"By my estimation I have given assets to the wife in the amount of $89,000. I have given assets to the husband, after the deduction for the debt service that I've ordered him to assume, in the amount of $20,000. [An actual

calculation of the values reflect the approximate figures of $90,000 and $8,000 as recited elsewhere in this opinion.] *I think that this disparity and the division of the property adequately compensate the wife for the contribution she made toward the creation of the asset which is the baseball retirement."* (Emphasis added.)

Thus, it appears clear that the trial court not only recognized the baseball retirement plan as an asset but specifically considered it as such in making the division of property. The reference to the monthly retirement payments as income, or as wages in some of the documents, only came about because Raymond was already receiving his monthly retirement benefits and does not indicate that the court failed to consider the overall retirement plan as an asset subject to division. To the contrary, his specific statements were that the baseball retirement plan was an "asset" taken into consideration in the division of property.

The majority of the Court of Appeals reached the same conclusion, stating:

"Our reading of the record leads us to conclude that the trial court did not abuse its discretion in dividing the property. This conclusion is based principally upon two factors: (1) To obtain a reversal, it is an appellant's obligation to present a record which clearly shows abuse of discretion. Diane, by not having presented evidence establishing a value for Ray's baseball pension benefits entitlement or interest to the trial court, is disabled from presenting such a record on appeal. (2) The trial court's division of assets, with Diane's receiving property having a value approximately 11 times the net value of the property set over to Ray, leads us to conclude that not only did the trial court consider the pension plan as an asset, but gave some weight to it in dividing the property."

As a further argument that the court gave improper consideration to the baseball retirement plan, Diane contends that the court's award of the pension benefits in full to Raymond cannot be adequately offset by an award of other marital property to Diane. Diane argues that as the trial court could not properly use the "present cash value/setoff scheme" to effect the distribution of property, it should have employed the "reserve jurisdiction" method to divide the proceeds of the retirement plan.

Under the "present cash value/immediate offset" distribution scheme, the court, based upon evidence submitted, assigns a present value to the retirement benefits, awards the pension in full to the employee spouse, and awards other marital property

(or a note) of offsetting value to the other spouse. Under the "reserve jurisdiction" method, the court retains jurisdiction and divides the pension benefits between the parties if and when the pension is paid or awards a fixed percentage of all future payments to the non-pensioned spouse.

In *In re Harrison*, 13 Kan. App. 2d 313, 316, 769 P.2d 678 (1989), the Court of Appeals described and approved both approaches to distribution. Some states have specifically stated a preference for either the reserve jurisdiction method (see *Mitchell v. Mitchell*, 4 Va. App. 113, 120-21, 355 S.E.2d 18 [1987] [deferred distribution required by statute]; *In re Marriage of Steinke v. Steinke*, 126 Wis. 2d 372, 385, 376 N.W.2d 839 [1985]) or the present cash value/immediate offset method (see *Rask v. Rask*, 445 N.W.2d 849, 852 [Minn. App. 1989]; *Moore v. Moore*, 114 N.J. 147, 162, 553 A.2d 20 [1989]). However, Kansas has found neither method to be preferred as a matter of law. See *In re Harrison*, 13 Kan. App. 2d at 317.

To effect an equitable distribution using the present cash value/immediate offset method, the trial court awards the non-pensioned spouse marital property of comparable value to the present value of the pension. To do so, however, there must be evidence of the present value of the pension benefits. If the value of the pension exceeds the value of the other marital assets to the extent that the non-pensioned spouse cannot be adequately compensated under the present cash value method, then the trial court "reserves jurisdiction" and divides the pension when it is paid.

In the instant case, Diane did not present any evidence of the present value of the baseball retirement benefits. In *Harrison*, the wife presented expert testimony of a professor of finance, who calculated the present value of the benefits based upon actuarial tables. This figure was then adjusted for inflation and discounted by a historic rate of interest. 13 Kan. App. 2d at 314.

Here, without any evidence of the present value of the pension, it may be argued that the trial court was not able to accurately set aside other marital property of comparable value to Diane. Likewise, without such evidence the trial court was unable to determine if the value of the marital assets awarded to Diane fell short of the value of the pension so as to properly invoke the reserve jurisdiction method.

However, the burden is upon the appellant to furnish sufficient evidence to the trial court and to designate a record sufficient to present her points to the appellate court to establish the claimed error. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, Syl. ¶ 6, 697 P.2d 858 (1985). See *Beaty v. Beaty*, 167 Mich. App. 553, 557, 423 N.W.2d 262 (1988) (a husband's non-contributory pension does not have to be divided in the absence of any showing by the wife as to its present value); *Miller v. Miller*, 83 Mich. App. 672, 675, 269 N.W.2d 264, 266 (1978) (party seeking to include pension interest in marital estate for purposes of distribution in divorce proceedings bears burden of proving reasonably ascertainable value, and if burden is not met, interest should not be considered as asset subject to distribution); but see, *In re Marriage of Steinke v. Steinke*, 126 Wis. at 383 (trial court must evaluate and include the pension interest in the property division whether or not the parties present evidence on its value).

Unless the court abused its discretion in not adopting the reserve jurisdiction approach to the baseball retirement asset, Diane cannot complain about the division of property because she failed to establish any present value of the retirement benefits. Without any evidence of the value of the pension plan the trial court's method of considering the pension plan in its division of the property cannot be said to be an abuse of discretion.

Diane further complains that the court erred in adopting what she terms the "clean break" rationale. At a hearing on a motion for reconsideration, the trial court stated in part:

"I want to say, basically, first off, you try the cases the way you find them the day they come into the court. . . . And I gave you my best effort at the time we tried the case and I don't know that I've divided everything 50-50, but I've come as close as I know how to come under these circumstances. And I don't think that partitioning things 50-50 necessarily means just taking every asset and saying, 'You own 50-50.' That doesn't allow the parties to make a break. And what I've done, I think, allows the parties to put this litigation behind them. And if they don't want to be married anymore, then they don't have to see each other anymore. And as soon as Mr. Sadecki pays off these bills and the $8,500.00 judgment I gave his wife as further division of property, then this case is over and they don't ever have to talk to each other again, whereas if we start dividing up ongoing sources of income like baseball pension and the Sonic Burger, then they're tied together forever. So whether it's right or whether it's wrong, the

decision I made on August 24th is the one that I'm happy with, and that's going to be the decision of the Court. Motion to Reconsider is overruled."

Diane argues that the court erred in justifying the award of the pension plan and limited partnership to Raymond on the theory of a "clean break." She asserts in her brief, "The Court found that accomplishing a 'clean break' is more important than trying to accomplish a 50-50 division of assets." This argument is without merit. First, Kansas does not require courts to divide property 50-50. *LaRue*, 216 Kan. at 250. Second, it is not only within the trial court's discretion, but perhaps within the court's wisdom, to choose not to divide ongoing sources of income. As a general rule, the goal of the divorce court is to divide property in such a way as to avoid ongoing financial interaction between the parties. See, *e.g.*, *Simmons v. Simmons*, 87 Ill. App. 3d 651, 656, 409 N.E.2d 321 (1980). It is not unreasonable for a court to attempt to disentangle the parties' economic partnership so as to achieve a conclusion and finality to their marriage, and in most cases such a goal is to be commended. See *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 182-83, 559 N.E.2d 1292 (1990) (regarding distribution of retirement benefits).

Based upon the record before this court and considering our scope of review, we cannot say the trial court abused its discretion in the manner in which it considered Raymond's baseball retirement plan in arriving at the property division.

The final issue Diane raises on appeal is that the trial court erred by failing to consider the parties' future earning capacities as required by K.S.A. 1990 Supp. 60-1610(b). The statute provides in pertinent part: "In making the division of property, the court *shall* consider the age of the parties; the duration of the marriage; the property owned by the parties; *their present and future earning capacities . . . .*" (Emphasis added.)

Diane contends that the trial court's duty to consider future earning capacity is mandatory and that the court in dividing the assets looked only to the fact that Raymond was unemployed at the time of the divorce and had no prospects for a job at that time.

On appeal, the trial court's weighing of the statutory factors regarding distribution of property upon divorce will be governed

by an abuse of discretion standard. *Ruth v. Ruth*, 316 Pa. Super. 282, 286, 462 A.2d 1351 (1983).

Based upon the record before us, we cannot conclude that the trial court abused its discretion. While Raymond had been successful as a salesman during various periods following his retirement from professional baseball, his last productive employment had been terminated by his employer, Southwestern Bell, and he had been unemployed for approximately 17 months of the 2-year period preceding the divorce hearing. Raymond testified he had been unsuccessful in obtaining employment even though he had been actively seeking it. There was no testimony or evidence that he was intentionally avoiding employment and there was no evidence of any immediate prospects of gainful employment. The court found that Raymond "doesn't have a job and he doesn't have any prospects for a job." Assuming Raymond remained unemployed, the property division would result in Raymond and Diane receiving a similar level of yearly income. The record reflects that the court not only heard evidence of Raymond's past earning capacity, but also considered his record of unemployment and the lack of any evidence of future prospects for employment.

After considering all of the various arguments asserted by Diane, we cannot conclude that the trial court abused its discretion in the division of property in this divorce action.

The judgments of the Court of Appeals and the District Court are affirmed.