(827 P.2d 1222)

No. 66,410

In the Matter of the Marriage of LUANNE SEDBROOK, *Appellant,* and DELBERT SEDBROOK, *Appellee.*

Opinion filed March 13, 1992.

*Stephen J. Blaylock* and *Cindy Cleous-Stang*, of Woodard, Blaylock, Hernandez, Pilgreen & Roth, of Wichita, for appellant.

*David J. Lund*, of Dewey & Lund, of Wichita, for appellee.

Before LARSON, P.J., ELLIOTT, J., and NELSON E. TOBUREN, District Judge, assigned.

LARSON, J.: This is a divorce action in which Luanne Sedbrook appeals the trial court's ruling that she is ineligible to receive maintenance from Delbert Sedbrook because she was cohabiting with an unrelated male. Luanne also claims the trial court erred by ruling Delbert's City of Wichita firefighter's pension is not a marital asset subject to division and may only be considered as a source of funds for the payment of child support or maintenance.

The parties married in August of 1964. After 25 years, the parties separated and Luanne filed for divorce in November of 1989.

Delbert commenced his firefighting employment in May of 1963. Wichita established by charter ordinance its police and fire retirement system on January 1, 1965, which after numerous amendments became Charter Ordinance No. 131. Delbert became a member of the system and continued his uninterrupted employment until he retired in April of 1985 with a monthly pension for life of $1,022.94. Cost of living adjustments increased his monthly pension to $1,084.29 by the time of trial.

Luanne's contention that Delbert's pension was marital property subject to division was resolved adversely to her as a matter of law by the trial court in January 1991.

At the time of trial in late January and early February of 1991, Delbert was a mechanical maintenance engineer for St. Joseph Medical Center, earning approximately $1,500 gross per month in addition to his Wichita retirement pay. Luanne was a receptionist at Family Physicians and earned approximately $1,200 gross per month. She was 44 years old; he was 50 years old.

Luanne had been a homemaker for 14 years of the marriage. Three of the parties' four children were adults and the youngest was 17 at the time of the trial. Luanne has worked for Sears and Montgomery Ward, and had a variety of other jobs during the marriage.

During the pendency of the divorce, an auction liquidated the real and much of the personal property of the parties. After giving credit for payment of debts, the cash monies were divided: $17,414.85 to Luanne and $19,118.81 to Delbert.

A hearing on the maintenance issue was held in late February, and in early April the trial court ruled:

"The Court finds that the petitioner has been continuously cohabiting with a gentleman since approximately September, 1990. As a result, the Court finds that this conduct makes the petitioner ineligible to receive payment of spousal maintenance from the respondent. Therefore, the petitioner's motion for a determination of spousal maintenance is denied."

Luanne appeals. We reverse.

*The trial court abused its discretion in holding Luanne was precluded from receiving spousal maintenance solely because she cohabited with an unrelated male.*

"The trial court has wide discretion when it comes to matters relating to alimony, and its judgment in awarding alimony will not be disturbed absent a clear abuse of discretion." *Parish v. Parish,* 220 Kan. 131, 134, 551 P.2d 792 (1976). K.S.A. 1991 Supp. 60-1610(b)(2), which relates to maintenance, provides in part: "The decree may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances. The decree may make the future payments modifiable or terminable under circumstances prescribed in the decree."

Many of the statutory considerations relating to the division of property by case law are required to be considered in the de-

termination of maintenance. Justice Herd, in *Powell v. Powell*, 231 Kan. 456, 460, 648 P.2d 218 (1982), stated:

"[T]he judicial considerations regarding alimony are well settled. They were capsulized in *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976): 'Fault is but one element which may be considered in fixing alimony. Other matters which may be considered include the age of the parties, their present and prospective earning capacities, the length of the marriage, the property owned by them [citation omitted], the parties' needs [citation omitted], the time, source and manner of acquisition of property, the family ties and obligations [citation omitted], and the parties' overall financial situation [citation omitted]. There is no fixed rule on the subject and the district court in a divorce action is vested with wide discretion in adjusting the financial obligations of the parties. Thus, its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse.'
See also *Parish v. Parish*, 220 Kan. at 134."

Other than fault, which has been eliminated by the legislature as a factor, the foregoing provisions are similar to those in K.S.A. 60-1610(b)(1), setting forth considerations in the division of property, which include the allowance of maintenance or lack thereof.

The Kansas Supreme Court in *In re Marriage of Sommers*, 246 Kan. 652, 658-59, 792 P.2d 1005 (1990), determined that fault may no longer be considered in the division of property, award of maintenance, or award of attorney fees when the divorce is sought and granted on the ground of incompatibility, except in rare and unusual situations.

In *Sommers*, over the husband-petitioner's objection, evidence was admitted that he was having an extramarital affair. In a memorandum opinion the trial court stated:

" 'The Court specifically finds that the primary cause of the destruction of the marriage was the Petitioner's involvement with [name deleted], which the Court finds relevant to the issue of maintenance.

. . . .

" 'While this Court recognizes that this is a no-fault divorce case, nonetheless, there is still some room in these cases for fault . . . .' " 246 Kan. at 654.

Following a discussion of Maxwell, *In the Best Interests of the Divided Family: An Analysis of the 1982 Amendments to the Kansas Divorce Code*, 22 Washburn L.J. 177 (1983), Justice McFarland concluded: "[I]n domestic relations actions it was the legislative intent that, in all but extremely gross and rare situations, financial penalties are not to be imposed by a trial court

on a party on the basis of fault." 246 Kan. at 657. The court further stated:

"It is difficult to conceive of any circumstances where evidence of marital infidelity would be a proper consideration in the resolution of the financial aspects of a marriage. Consideration of such evidence could result only on a decision of whether or not to impose a penalty for such conduct, as it does not relate to the present or future financial circumstances of the parties or the award of any particular property." 246 Kan. at 658.

The court held: "Fault, as a term of art, is not to be considered in the determination of the financial aspects of the dissolution of the marriage, nor should a penalty be imposed as a result of such consideration. The only exception would be some rare and unusual situation where a party's conduct is so gross and extreme that failure to penalize therefor would, itself, be inequitable." 246 Kan. at 658-59.

The parties' divorce was granted in our case on the ground of incompatibility. When the trial court determined the amount, if any, of maintenance to be allowed, there was no mention in the court's order of the consideration of anything other than fault. After finding Luanne had been cohabiting with an unrelated male since September of 1990, the trial court stated: "As a result, the Court finds that *this conduct* makes the petitioner ineligible to receive payment of spousal maintenance from the respondent." (Emphasis added.)

The trial court did not express indignation or criticize Luanne's cohabitation, but found that it alone was sufficient to deny maintenance. It appears the trial court resolved the issue of maintenance on the single factor of cohabitation and failed to conduct a realistic evaluation of the parties' circumstances, future income, and needs as is required by *Sommers*, 246 Kan. at 658.

Delbert argues the trial court committed no error because maintenance is terminable as well as modifiable, and since Sedgwick County courts have consistently terminated maintenance upon the continuous cohabitation with an unrelated person of the opposite sex, it would have been a waste of the trial court's time to make all the necessary considerations, allow maintenance, and immediately find that it is terminated. We disagree.

The divorce in this case was not granted until February 6, 1991, and it is clear that under K.S.A. 1991 Supp. 60-1610(c)(2)

any marriage contracted by a party with any other person before the judgment of divorce is final is voidable. There is no indication that Luanne and her cohabitant considered themselves wife and husband after the divorce was final.

The trial court's denial of maintenance appears to be based solely upon Luanne's cohabitation. This brings into issue the nature of her relationship and its legal effect.

In discussing cohabitation, Professor Linda H. Elrod in 1 Elrod, Kansas Family Law Handbook § 10.083 (rev. ed. 1990), states:

"Without a provision in a decree or agreement, most courts have found that cohabiting with another is not by itself a sufficient change of circumstances to justify termination of maintenance. [*Van Gorder v. Van Gorder*, 110 Wis. 2d 188, 327 N.W.2d 674 (1983); *Overson v. Overson*, 125 Wis. 2d 13, 370 N.W.2d 796 (Wis. App. 1985), *appeal after remand* 140 Wis. 2d 752, 412 N.W.2d 896 (Wis. App. 1987).] Cohabitation is only one factor to consider in assessing the needs of the recipient. If the recipient is in fact being supported by the cohabitant, there may be a strong case for termination based on need no longer [being] present."

In *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 429, 747 P.2d 187 (1987), the husband and wife entered into a settlement agreement which became incorporated into their divorce decree and provided that the husband's support obligations be reduced upon the wife's "continuous and continual cohabitation with an unrelated male." The wife admitted to having a sexual relationship but claimed that she had an understanding with the unrelated male that they were free to date other people, that they never held themselves out as husband and wife, and that they had no plans to marry. The wife testified they had done household chores and favors for each other but they maintained separate residences, had no jointly owned property, and did not purchase groceries together or share mortgage or credit card payments.

Our court adopted the following definition of cohabitation from *Biltgen v. Biltgen*, 121 Kan. 716, 250 Pac. 265 (1926):

" ' "The act or state of dwelling together, or in the same place with another; living together as husband and wife; a living together as man and wife. A condition or status of the parties, a status resembling that of the marital relation. Cohabitation is not a sojourn, nor a habit of visiting, nor even a remaining with for a time; the term implies continuity." ' 121 Kan. at 721 (quoting 11 C.J. 952)." *Wessling*, 12 Kan. App. 2d at 431.

We held that since the ex-wife and unrelated male did not intend to marry, never maintained a home together, and never shared living expenses nor jointly owned any property, they were not cohabiting.

In *Fleming v. Fleming*, 221 Kan. 290, 559 P.2d 329 (1977), the husband and wife entered into a separation agreement providing for alimony terminating upon the wife's death or remarriage. Husband claimed his ex-wife had entered into a common-law marriage with an unrelated male and, if a marriage was not found to exist, it was nonetheless contrary to public policy to compel him to pay alimony when his former wife was openly cohabiting with another man.

The trial court in *Fleming* found no common-law marriage existed because no present agreement to marry was established. This was affirmed on appeal and our Supreme Court further found the ex-wife had no implied legal obligation of support from the unrelated male. Chief Justice Fatzer found no fault with the quotes from *Herzmark v. Herzmark*, 199 Kan. 48, 54, 427 P.2d 465 (1967), that it was distasteful to permit a divorced wife to hold her former husband and present husband to a duty of support and that it is contrary to public policy for a woman to receive support from both a former and present husband, but said:

"[H]owever, here we are not dealing with a former and present husband. We are dealing with a former husband and a present boy friend with no obligation to support. Alimony is based on the obligation to support an ex-wife and is not to be measured in the future by her chastity or moral conduct." *Fleming*, 221 Kan. at 293.

A similar holding that did not disadvantage a divorced wife who permitted an unrelated male to live with her and pay rent and half of the household expenses is found in *In re Marriage of Arndt*, 239 Kan. 355, 719 P.2d 1236 (1986).

In our case, the trial court's finding of cohabitation may not be equated with the conclusion that Luanne's relationship with an unrelated male has become that of wife and husband and is not, by itself, sufficient to justify denial of spousal maintenance.

The legislative intent statement of *Sommers*,

"Generally, it is the legislative intent that fault not be considered by a trial court in considering the financial aspects of the dissolution of a marriage pursuant to K.S.A. 1989 Supp. 60-1610(b), as any consideration involves a

determination of whether or not to impose a penalty for misconduct and is inconsistent with the desire that the dissolution of a marriage occur with minimal hostility and vituperation. The only exception to this rule would be some rare and unusual situation where the misconduct is so gross and extreme that failure to penalize therefor would, itself, be inequitable." 246 Kan. 652, Syl. ¶ 2,

makes the trial court's order an abuse of discretion because Luanne is being penalized for marital infidelity. The determination of whether maintenance is to be allowed must be arrived at by considering the *Powell*, 231 Kan. at 460, and *Williams v. Williams*, 219 Kan. 303, 548 P.2d 794 (1976), factors, with the exception of fault.

It is not, however, improper for the trial court to consider the nature and extent of the financial contribution of an unrelated party, or that which he or she may be capable of assuming, in order to maintain a relationship with the spouse seeking continued maintenance from a former spouse.

Maintenance and division of property are separate and distinct concepts, but neither can be intelligently fixed by itself without giving appropriate consideration to the other. *Almquist v. Almquist*, 214 Kan. 788, Syl. ¶ 6, 522 P.2d 383 (1974). A division of property operates retrospectively to adjust the rights of the parties to property already accumulated, while maintenance is prospective and deals with future support. *Beck v. Beck*, 208 Kan. 148, 149, 490 P.2d 628 (1971). The issue is not raised in this appeal, but we do not approve the deciding of the division of property first and then, in a later hearing, the determination of maintenance.

K.S.A. 1991 Supp. 60-1610(b)(1) provides that in making a property division one of the things to be considered is "the allowance of maintenance or the lack thereof." The determination of maintenance and the division of property should be made at the same time but, if separately determined, in the reverse order to the manner decided by the trial court herein.

*The trial court erred in finding Delbert's firefighter's pension was not marital property.*

Luanne contends the trial court erred when it determined Delbert's pension as a retired Wichita firefighter was not divisible marital property.

Citing as authority our decision in *Grant v. Grant,* 9 Kan. App. 2d 671, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984), the trial court ruled, as a matter of law, that the pension could only be considered as a source of funds in determining Delbert's ability to pay spousal support because (1) it was not specifically defined as marital property pursuant to K.S.A. 23-201, (2) it was governed by an anti-alienation city ordinance, and (3) it had no present determinable value.

Based primarily on the Kansas Supreme Court decisions in *In re Marriage of Sadecki,* 250 Kan. 5, 825 P.2d 108 (1992), and *Sommers,* 246 Kan. 652, and our opinion in *In re Marriage of Harrison,* 13 Kan. App. 2d 313, 769 P.2d 678 (1989), plus the overwhelming number of decisions on this issue throughout the United States, we decline to give *Grant* the credence which it was given by the trial court.

Our review of the trial court's conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). We further believe that this is a matter of first impression in Kansas because our appellate courts have not determined previously if a municipal firefighter's pension is divisible marital property.

The statutory basis for division of property in Kansas is provided by K.S.A. 1991 Supp. 60-1610(b), which states:

"(1) *Division of property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses joint efforts, by: (A) a division of the property in kind; (B) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum; or (C) ordering a sale of the property, under conditions prescribed by the court, and dividing the proceeds of the sale. In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets, and such other factors as the court considers necessary to make a just and reasonable division of property."

K.S.A. 23-201(b) defines "marital property" in the following manner:

"All property owned by married persons, including the present value of any vested or unvested military retirement pay, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenacy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

Our court in *Grant* held military retirement pay was nothing more than a future stream of income with speculative future value and was not a marital asset subject to division. 9 Kan. App. 2d at 676.

The result in *Grant* (and its precedential value, in our view) was eliminated by the Kansas Legislature in 1987 when it amended K.S.A. 23-201(b) (Ensley 1981) by adding the words "including the present value of any vested or unvested military retirement pay" after the introductory phrase "[a]ll property owned by married persons." L. 1987, ch. 120, § 1.

We recognized this in *In re Marriage of Harrison*, 13 Kan. App. 2d at 315, when we held that military retirement pay, whether vested or unvested, is marital property subject to division upon the dissolution of a marriage.

Because remand was necessary to make a new property division in *Harrison*, we suggested the trial court either determine the present cash value of the asset, reserve jurisdiction to divide the asset as it is received, or use other methods of valuation and disposition which might better address the interests and needs of the parties. We recognized: "The key to an equitable distribution of marital assets is fairness, not mathematical precision." 13 Kan. App. 2d at 317.

The Kansas Supreme Court next addressed this issue in *Sommers*, 246 Kan. 652, when it held United States Postal Service vested retirement benefits were marital property. After quoting K.S.A. 23-201(b), Justice McFarland recognized that the reference to military retirement pay was added to the statute because of *Grant*, and then chose to expand the scope of K.S.A. 23-201(b) by stating:

"The language of K.S.A. 23-201(b) appears to be inclusive rather than exclusive. There is no logical reason why one type of retirement benefits for federal services should be treated differently from another. We conclude that K.S.A. 23-201(b) is broad enough to include retirement benefits from the U.S. Postal Service and that the trial court had authority for its consideration thereof." *Sommers,* 246 Kan. at 660.

Justice Six wrote a concurring and dissenting opinion in *Sommers* which was joined by Chief Justice Miller and Justice Lockett, but their disagreement extended only to the fault issues. The *Sommers* court was unanimous in its expansion of the provisions of K.S.A. 23-201(b).

In the most recent Kansas Supreme Court case on this issue, *In re Marriage of Sadecki,* 250 Kan. 5, the trial court was held not to have abused its discretion in the manner in which it considered a major league baseball retirement pension.

In *Sadecki,* the total value of the property and judgment awarded to the wife exceeded $90,000, while the net value of the property granted to the husband, after deduction of indebtedness and the wife's judgment, was $7,950. The wife argued the baseball retirement plan had not been deemed an asset subject to division and was only considered as income in comparing the relative incomes of the parties. The husband asserted there was no evidence as to the retirement plan's value and that it was considered by the trial court as marital property.

Chief Justice Holmes, writing for a unanimous court, ruled the trial court properly considered the benefits under the retirement plan as an asset based on the trial court's statement: "'I think that this disparity and the division of the property adequately compensate the wife for the contribution she made toward the creation of the asset which is the baseball retirement.' " *Sadecki,* 250 Kan. at 10.

The wife complained the trial court abused its discretion in not employing the "reserve jurisdiction" method to divide the proceeds of the retirement plan, which was one of the methods we described and approved in *Harrison.* Chief Justice Holmes' opinion described both the present cash value/immediate offset distribution scheme and the "reserve jurisdiction" method in *Sadecki* as our court had in *Harrison,* but distinguished *Harrison* because there expert testimony was presented by a professor of

finance who calculated present value actually adjusted for inflation and discounted by a historic rate of interest, while the wife in *Sadecki* did not present any evidence of the present value of the baseball retirement benefits, which were currently approximately $2,000 per month.

The trial court in *Sadecki* did not abuse its discretion in failing to adopt the reserve jurisdiction approach. The wife could not complain about the division of property because she failed to establish any present value of the retirement benefits. 250 Kan. at 12.

Throughout the *Sadecki* opinion, all of the comments concerning the benefits under the major league baseball retirement plan treat it as an "asset," which is tantamount to a holding that it is marital property subject to division.

We will not attempt to cite every case throughout the United States considering this issue, but the following is a representative sample of the majority of the states that consider retirement benefits property subject to equitable division at the dissolution of a marriage. See, *e.g.*, *Rice v. Rice*, 757 P.2d 60, 61 (Alaska 1988) ("[T]o the extent retirement benefits have been earned during the marriage, they constitute marital assets and are subject to equitable division."); *Koelsch v. Koelsch*, 148 Ariz. 176, 180, 713 P.2d 1234 (1986) (" '[T]he retirement benefits provided under the [Public Safety Personnel Retirement System] are deferred compensation for services previously rendered and are therefore property acquired during marriage' " subject to division by the court.); *In re Marriage of Hackett*, 113 Ill. 2d 286, 292-93, 497 N.E.2d 1152 (1986) (Proceeds of vested interest in Fireman's Pension Fund were properly classified as marital property.); *In re Marriage of Oler*, 451 N.W.2d 9, 11 (Iowa App. 1989) ("[P]ension benefits [, including Iowa Public Employees Retirement System benefits,] are treated as marital property and are properly subject to equitable distribution."); *Davolt v. Davolt*, 764 S.W.2d 497, 499 (Mo. App. 1989) (Pension benefits earned during the marriage must be considered part of the marital property subject to division in marital dissolution proceedings.); *Olson v. Olson*, 445 N.W.2d 1, 11 (N.D. 1989) (Unless there is some specific restriction in the plan, pension or retirement benefits accumulated during the marriage are marital property divisible

at divorce.); *Rice v. Rice,* 762 P.2d 925, 926 (Okla. 1988) ("[P]ension benefits [, including police officer's pension,] which have accumulated during marriage may be considered as jointly acquired property subject to equitable division in a divorce.") For a comprehensive collection of the cases on this issue, see Annot., Pension Rights-Division on Dissolution, 94 A.L.R.3d 176, and the supplement thereto.

The rationale for including pension benefits as marital property subject to equitable division has been stated in *Stevenson v. Stevenson,* 511 A.2d 961, 965 (R.I. 1986):

" 'To the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years.' 3 Rutkin, *Family Law and Practice* § 37.07 [1] at 37-81 (1985)."

We do not deem it necessary to attempt to make distinctions between retirement benefits based on contribution by the participant or the lack thereof; nor do we hold that a different rule must be applied to vested or unvested benefits.

We note in this case that Delbert had contributed $15,104.55 toward his pension benefits during his employment, all of which was recovered in approximately 15 months. We do not deem it critical to our decision that Delbert's rights under his Wichita firefighter's pension were in lieu of any social security benefits which, had they existed, Luanne would have been entitled to share in due to the long term of the parties' marriage.

Delbert finally contends the pension is not divisible because this is prohibited by Kansas statutes and Wichita charter ordinance anti-alienation provisions.

Pursuant to home rule powers, the City of Wichita, through Charter Ordinance No. 131, exempted itself from K.S.A. 13-14a01 *et seq.,* the state statutes governing fire and police retirement systems. Charter Ordinance No. 131, § 16 provided:

"**EXEMPTIONS.** The right to a service retirement annuity, disability annuity, death annuity or any annuity or benefit under the provisions of this ordinance by whatever name called, or a refund, is personal with the recipient thereof, and the assignment or transfer of any such annuity or benefit

or any part thereof shall be void, except as may be provided herein. Any such annuity or benefit shall not answer for debts contracted by the person receiving the same, and it is the intention of this ordinance that they shall not be subject to execution, attachment, garnishment, or affected by any judicial proceedings."

Similar anti-assignment or anti-alienation provisions relative to state and local government retirement benefits are found at K.S.A. 12-111a, K.S.A. 12-5005(e), K.S.A. 13-14a10 and K.S.A. 1991 Supp. 74-4923(b). K.S.A. 12-5005(e) (Kansas Police and Firemen's Retirement System) and K.S.A. 1991 Supp. 74-4923 (Kansas Public Employees Retirement System [KPERS]) both specifically provide that benefits thereunder are not subject to execution, garnishment, attachment or any other process or claim whatsoever, except such annuity, pension, or benefit or any accumulated contributions due and owing from the system to such person(s) or special member *are subject to decrees for child support or maintenance, or both, as provided in K.S.A. 60-1610 and amendments thereto."* (Emphasis added.)

The Kansas Supreme Court in *Mahone v. Mahone*, 213 Kan. 346, 348, 352, 517 P.2d 131 (1973), held the anti-alienation provisions in K.S.A. 74-4923 (Weeks), which then provided that KPERS funds "shall not be subject to execution, garnishment, or attachment, or any other process or claim whatsoever, [including decrees for support or maintenance,] and shall be unassignable," was inapplicable to a claim for past-due child support.

Justice Prager looked to the purposes of KPERS as enabling public employees to accumulate reserves for themselves and their dependents in stating:

"In arriving at this conclusion we have applied the principle that a statute is not to be given an arbitrary construction, according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. 'It is not the words of the law but the internal sense of it that makes the law; the letter of the law is the body; the sense and reason of the law is the soul.' [Citation omitted.] The whole purpose and policy of our exemption laws has been to secure to an unfortunate debtor the means to support himself and his family, to keep them from being reduced to absolute destitution and thereby public charges. [Citation omitted.] In construing statutory exemptions this court has consistently taken into consideration this purpose and policy. We have by judicial construction exempted from the application of certain statutory exemptions, persons and situations not falling within that purpose." *Mahone*, 213 Kan. at 350.

Last year our court in *In re Marriage of Knipp*, 15 Kan. App. 2d 494, 809 P.2d 562, *rev. denied* 248 Kan. 995 (1991), held that federal law (42 U.S.C. § 407[a] [1988]) precluded a Kansas court from dividing a lump sum social security disability award, but did not prohibit considering the value of the award in dividing marital property. The exemption section there involved provided:

" '(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none *of the moneys paid or payable* or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.' (Emphasis added.)" 15 Kan. App. 2d at 495.

Interestingly, the party prevailing in our court petitioned for review, claiming our decision permitted, and indeed encouraged, the trial court to do indirectly what it could not do directly. The petition for review was not granted.

An earlier Supreme Court decision on a companion issue, *Mariche v. Mariche*, 243 Kan. 547, 758 P.2d 745 (1988), citing *Mahone* as authority, held social security disability benefits payable to a parent are subject to garnishment to satisfy past-due child support payments, and that such garnishment is not precluded by what is now K.S.A. 1991 Supp. 60-2308(a). The true purpose of the exemption statute, to protect the funds necessary to support a pensioner and his family, precluded strict application of the exemption statute. 243 Kan. at 551-52.

We find no decisions directly relating to the construction of the Wichita ordinance and thus look to decisions from other states.

Community property states have held not only is each spouse the owner of the other's pension (a position we might reach by a literal reading of the language of K.S.A. 23-201(b) that "[e]ach spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto"), but also the anti-alienation provisions were designed to protect benefits from creditors and not from spouses and family members. See *Koelsch v. Koelsch*, 148 Ariz. 176, 180, 713 P.2d 1234 (1986); *Collida v. Collida*, 546 S.W.2d 708, 710 (Tex. Civ. App. 1977).

Illinois held in *In re Marriage of Hackett*, 113 Ill. 2d at 292-93, that enactment of anti-alienation provisions was to protect retired firefighters and their beneficiaries from creditors and that benefits could be divided between divorcing parties. See *Rice v. Rice*, 762 P.2d at 927 (anti-alienation provision is a "spendthrift" provision to protect a pensioner's income from the claims of creditors; as spouse in divorce proceedings is not a creditor, benefits accumulated during marriage are subject to division as jointly acquired property).

There have been earlier cases which hold to the contrary, but the recent trend is in accordance with the cases above cited.

In *Graham v. Graham*, 396 Pa. Super. 166, 578 A.2d 459 (1990), a state employee's pension was deemed subject to attachment through a qualified domestic relations order in a divorce action notwithstanding a statute exempting benefits from any process whatsoever. *Young v. Young*, 507 Pa. 40, 488 A.2d 264 (1985), was quoted by the *Graham* court in setting forth two reasons why state or municipal pensions were not excluded from equitable distribution with the court, stating:

"[First], '[r]etirement funds . . . are created for the protection of not only the employee, but for the protection of his family as well. Hence, the provisions exempting assignments and attachments contained therein are to relieve the person exempted from the pressure of claims that are hostile to his *and to his dependents' essential needs'*, citing *Fowler v. Fowler*, 116 N.H. 446, 362 A.2d 204, 205, 93 A.L.R.3d 705 (1976).

"[Second], we note that a family loses its ability to spend a portion of its income when that income is deferred and placed in a pension. It would be terribly unfair to read an exemption statute, which was created to protect a pension for the benefit of a retired employee's family, in such a way that the exemption would bar children *or a former spouse* from receiving support from the very fund created for their benefit, and would once again deny them the benefits of the income they sacrificed to a pension years before. *Id.*, 507 Pa. at 47-50, 488 A.2d at 267-69 (emphasis added)." 396 Pa. Super. at 170-71.

Wichita Charter Ordinance No. 131 sets forth in § 2 that the system provides "retirement annuities, survivors' annuities, death benefits and other benefits for police and fire officers of the City of Wichita *and their dependents.*" (Emphasis added.) We believe a spouse must be considered as a dependent to be granted protection under the plan and not treated as a creditor. A spouse

is a member of the family unit the retirement plan is designed to protect. We hold the anti-alienation provisions, in particular those relating to exemption from garnishment, attachment, and prohibition of assignment, do not apply to the claims of a spouse at the time of the marital dissolution.

An excellent collection of cases from the increasing number of states that by statute and decision have conferred on divorce courts authority to make an equitable distribution of joint and separate property and have recognized spousal claims to an interest in retirement and pension benefits is set forth in Baxter, Marital Property § 11.2 (1991 Supp.).

While there is ample authority for our decision here in the prior Kansas decisions we have cited, especially *Sadecki*, 250 Kan. 5; *Sommers*, 246 Kan. 652; and *Harrison*, 13 Kan. App. 2d 313, the logic of those opinions and ours herein is bolstered by some of Professor Baxter's observations:

"The most timely issue regarding the economics of divorce is the question of spousal claims to an interest in retirement or pension benefits of the other spouse. . . .

. . . .

"More important, in our typical case, the wife has a just claim to a share of the benefit derived from joint contributions, albeit her contributions were of a different order. She already has earned her right to a share and paid for it with her past services. Thus she has a present accrued interest, not a contingent claim such as is involved in alimony.

. . . .

". . . The spread of no-fault grounds requires that the economics of divorce be fair and equitable, otherwise the homemaker wife may be victimized and impoverished.

". . . Not only has alimony been de-sexed, it also has come to be regarded as an interim stipend which is available for a relatively short time while a former spouse in need prepares for the labor market. . . . In short, the current law of divorce in most states has upset the former equilibrium and requires new approaches to the concepts of marital property and the future financial security of broken families." Baxter, Marital Property § 11.2, pp. 26-28.

We hold that none of the three reasons given by the trial court justifies the refusal to consider Delbert's firefighter's retirement benefits as marital property because:

(1) *Sommers* and *Sadecki* support our finding that K.S.A. 23-201(b) includes a municipal pension as marital property;

(2) the anti-alienation provisions of the Wichita ordinance must not be applied to disadvantage spouses and family members; and

(3) *Harrison* and *Sadecki* provide ample authority that the retirement benefit has a determinable value.

Luanne claims the trial court has authority to make her an alternate payee under Delbert's pension plan pursuant to K.S.A. 1991 Supp. 60-2308(b) and (c). We will not reach or decide this issue for two reasons. This was not an issue before the trial court and will not be considered for the first time on appeal. *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan 548, 552, 731 P.2d 273 (1987). There is also an insufficient record to determine if the statutory requirements are met. See *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 399, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988).

We also decline to remand, as Luanne requests, with instructions that the retirement benefits be divided equally, in kind. The trial court may divide property as set forth in K.S.A. 1991 Supp. 60-1610(b)(1). We will not make an order limiting or confining the trial court's options.

We recognize the large burden which trial courts bear in following the provisions of K.S.A. 1991 Supp. 60-1610(b), but they must be free to reach decisions that are fair, just, and equitable under all of the circumstances in accordance with the evidence which may be presented and the contentions and arguments which are made.

Reversed and remanded for determination of the property division and allowance of maintenance, if any, in accordance with the directions of this opinion.