(838 P.2d 366)

No. 67,305

WILLIS D. HARDER and DELIA A. HARDER, *Appellants*, v. GLEN R. WAGLER, CHARLES R. WAGLER, JOHN JAY DARRAH, JR., and TEXACO TRADING & TRANSPORTATION, INC., a Delaware Corporation, *Appellees*.

Opinion filed September 4, 1992.

*Stanley R. Juhnke*, of Hutchinson, for appellants.

*Carolyn H. Patterson*, of Martindell, Swearer & Shaffer, of Hutchinson, for appellees.

Before BRAZIL, P.J., ELLIOTT and PIERRON, JJ.

BRAZIL, J.: Willis and Delia Harder appeal from a trial court's decision on their petition to quiet title to ownership of an oil and gas royalty interest. The court found in favor of Glen and Charles Wagler, holding that the documents at issue created an ambiguity, requiring the introduction of parol evidence to resolve the issue. The court then awarded the disputed royalty interest to the Waglers. We affirm.

Briefly summarized, the relevant facts are as follows. In 1974, Leah Wagler, owner of the real estate at issue, executed an oil and gas lease to Hinkle Oil Company, retaining a ⅛ royalty. Almost two years later, Leah conveyed the property by warranty

deed to her nephew, Raymond Wagler. There was no production under the Hinkle Oil Company lease, but all delay rental payments were made, keeping the lease in full force and effect.

The Hinkle Oil Company lease was still in effect on September 20, 1976, when Raymond executed an "assignment of royalty in oil and gas," giving to each of his brothers, Glen and Charles, "an undivided one-third ($\frac{1}{3}$) of the landowner's one-eighth ($\frac{1}{8}$) royalty from any oil and gas produced from the following premises . . . ." The assignment referenced the land conveyed to Raymond by his aunt. Hinkle Oil Company released its lease on the property in November 1980 without ever producing any oil or gas.

In 1981, Raymond executed an oil and gas lease to Louisiana Land & Exploration Company (Louisiana Land), reserving a $\frac{3}{16}$ royalty interest. Glen and Charles ratified the lease. Oil was discovered in paying quantities by Louisiana Land in June 1982. On September 30, 1982, Glen and Charles executed identical documents conveying back to Raymond what the trial court concluded was their royalty interest over and above their $\frac{1}{3}$ of $\frac{1}{8}$ royalty interest. These documents, along with Raymond's assignment of the royalty interest in 1976, have precipitated this litigation.

Glen and Charles were each paid a royalty interest of $\frac{1}{3}$ of $\frac{1}{8}$. Glen and Charles claimed that they each conveyed their portion of the additional $\frac{1}{16}$ royalty interest back to Raymond to "reward their brother" for his successful negotiations with Louisiana Land. That conveyance left them with an interest in approximately "the customary one-eighth royalty." The 1982 conveyances back to Raymond provided that, upon termination of the royalty interest in the Louisiana Land lease, "Grantors [Glen and Charles] shall own an undivided one-third of three-sixteenths ($\frac{1}{3}$ of $\frac{3}{16}$) interest in and to all the oil, gas and other minerals in, under and which may be produced from said land."

After this transaction, Raymond was receiving his original $\frac{1}{3}$ of $\frac{1}{8}$ royalty interest plus a full $\frac{1}{16}$ royalty interest. Raymond and his wife lost the real estate and their portion of the royalty interest in 1988 in a mortgage foreclosure action. The Harders bought the land and succeeded to Raymond's royalty interest. The Harders felt that, according to all of the above documents which were filed of record, Glen and Charles never owned more than $\frac{1}{3}$ of $\frac{1}{8}$ interest each; therefore, when the brothers made the 1982 conveyances back to

Raymond, they were each reducing their ⅓ of ⅛ interest by that amount, leaving Raymond with the balance of the ³/₁₆ interest, which now belonged to the Harders.

During this period, John Jay Darrah supervised operations under the Louisiana Land lease, and the mineral production was purchased by Texaco Trading & Transportation, Inc. (TTTI). The Harders filed a petition against Glen, Charles, Darrah, and TTTI, asking the district court to quiet title as to the disputed royalty interest. Glen and Charles filed a counterclaim, arguing that they each owned a ⅓ of ⅛ interest, as well as an additional reversionary interest of ⅓ of ¹/₁₆ of the mineral estate on the property if the Louisiana Land lease should terminate within 20 years from 1976. Both parties moved for summary judgment. The court denied the motions, finding that material questions of fact remained.

Following further discovery, the parties again moved for summary judgment. The trial court again denied the motions, finding key documents were ambiguous. The court stated the following on the record:

"In 1974 Leah Wagler leased this property for five years reserving a one-eighth interest to herself. In August of 1976 she deeded the property to Raymond. In September of 1976 Raymond sold or assigned to Glen and Charles each a one-third of the landlord's one-eighth royalty.

"The only fair way to read that is, and the only reasonable way to set this case up, is on forty-eighths. That that's a one twenty-[fourth] or two forty-eighths interest for 20 years or as long as oil and gas production went on.

"In 1981 Raymond leased the property to an oil company and reserved three-sixteenths, or nine forty-eighths. In September of 1982 Glen and Charles both deeded back to Raymond a one forty-eighth interest. At that time and in that document then they each and all agreed that upon termination of that particular interest that they would each own an undivided one-third of [three-sixteenths], or an undivided one-sixteenth interest apiece.

"Since the original document which granted Glen and Charles their interest only provided them with a two forty-eighths it's very difficult for the court to understand how they could then all agree that they each owned one-sixteenth.

"Therefore, for anyone to claim that these documents are not ambiguous does something to the logic of this court because you can't say in one document I hereby give this person two forty-eighths and then agree in the next document that we ought to each own one-sixteenth. These documents are obviously ambiguous."

The court then heard evidence concerning what the parties intended to achieve with these documents and, by a journal entry, made the following findings:

"16. When Raymond Wagler made the assignment of royalty dated September 20, 1976, he intended to convey to each of his brothers a one-third interest in the landowner's royalty on the above described property.

"17. When Glen R. Wagler and Charles R. Wagler on September 30, 1982, each conveyed to Raymond Wagler an undivided .020835 interest in and to the oil and gas and other minerals produced from the real estate, they intended to convey their shares of a one-sixteenth royalty interest which was a part of the total three-sixteenth royalty reserved in the current lease.

"18. Glen R. Wagler and Charles R. Wagler at all times while the current lease is in force, each intended to own by the above described conveyances, and do own, one-third of the term royalty interest on the identified land, less the term mineral interest conveyed to Raymond Wagler, Plaintiffs' predecessor in title."

"It is well settled that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective interests of the parties, although they do not in terms refer to each other. (*MacLorinan v. Finley,* 124 Kan. 637, 640, 261 Pac. 587; *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594; *Steele v. Nelson,* 139 Kan. 559, 32 P.2d 253; *Setchell v. Reed,* 153 Kan. 818, 820, 113 P.2d 1050; 17 C.J.S. Contracts, § 298, p. 714.)" *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 134, 368 P.2d 19 (1962).

The Harders contend that the document entitled "Assignment of Royalty In Oil and Gas", dated September 20, 1976, and the two nearly identical documents entitled "Sale of Oil and Gas Royalty," each dated September 30, 1982, were not ambiguous and that parol evidence should not have been admitted to ascertain the intent of the parties.

"Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). Moreover, "regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." *State v. Smith,* 244 Kan. 283, 284, 767 P.2d 1302 (1989).

Raymond's assignment of his royalty interest in 1976 purported to transfer to each of his two brothers "an undivided one-third

($\frac{1}{3}$) of the landowner's one-eighth ($\frac{1}{8}$) royalty from any oil and gas produced" from his land. At the time of the assignment, Raymond's land was subject to an oil and gas lease held by Hinkle Oil Company, whereby Raymond received a $\frac{1}{8}$ royalty from the total production. Thus, in 1976, each brother was to receive $\frac{1}{3}$ of $\frac{1}{8}$.

Without ever producing any oil or gas from the property, Hinkle Oil Company released its lease in 1980. Raymond negotiated a new lease with Louisiana Land, whereby he retained a $\frac{3}{16}$ royalty interest. The Harders contend that Raymond assigned to his brothers an undivided $\frac{1}{3}$ of $\frac{1}{8}$ interest in the property in 1976. Thus, when both Glen and Charles sold $\frac{1}{3}$ of $\frac{1}{16}$ of their royalty interest back to Raymond in 1982, it reduced their $\frac{1}{3}$ of $\frac{1}{8}$ royalty interest by that amount.

The Waglers contend that Raymond's 1976 assignment operated to give them an undivided $\frac{1}{3}$ in Raymond's entire royalty interest, whatever it might be in the future. They contend that use of the language "landowner's one-eighth ($\frac{1}{8}$) royalty" is not limited to its literal meaning and that the term *landowner's royalty* is a term of art within the industry. "The landowner's royalty is customarily considered as one-eighth of all of the oil or gas produced. This is commonly styled the landowner's one-eighth royalty." *Corbin v. Moser*, 195 Kan. 252, 256, 403 P.2d 800 (1965). The Waglers argue that this language conveyed one-third of whatever Raymond held as a *landowner's royalty* in the future and that they were not limited to $\frac{1}{3}$ of $\frac{1}{8}$ if he should receive a larger royalty interest under a different lease. This is the way the trial court interpreted the documents.

The trial court focused on the following sentence in the 1982 documents selling interests back to Raymond:

"It is further understood that, upon the termination of such royalty interest [under the Louisiana lease], Grantors [Glen and Charles] shall own an undivided one-third of three-sixteenths ($\frac{1}{3}$ of $\frac{3}{16}$) interest in and to all the oil, gas and other minerals in, under and which may be produced from said land."

The trial court found that, because the 1976 assignment gave the brothers $\frac{1}{3}$ of $\frac{1}{8}$, or $\frac{2}{48}$, "it's very difficult for the court to understand how they could then all agree that they each owned one-sixteenth." The Harders admit that a mistake was made in the 1982 sale documents.

The Waglers contend that, because two interpretations of the documents are possible, the documents must be ambiguous. "[T]he language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings." *Richardson v. Northwest Central Pipeline Co.,* 241 Kan. 752, 758, 740 P.2d 1083 (1987). Ambiguity is also defined to include "duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument." *Siegel v. Hackler, Administrator,* 181 Kan. 316, 319, 310 P.2d 914 (1957); see 1 Pierce, *Kansas Oil and Gas Handbook* § 5.12 (1986).

When interpreting conveyances, courts first look at the language used within the four corners of the instrument in an attempt to determine the intent of the parties. See *Heyen v. Hartnett,* 235 Kan. 117, 122, 679 P.2d 1152 (1984). Describing Glenn and Charles' interests in the 1982 sale documents as different from what they owned under the 1976 document creates an uncertainty as to what they will actually own when the Louisiana Land lease is terminated.

The Harders argue that the 1976 assignment must be construed without reference to the 1982 documents and, likewise, the 1982 documents should be construed without reference to the 1976 assignment. They contend that, if construed separately, the documents are not ambiguous and that it was error to admit parol evidence. We disagree.

This is an appeal in a quiet title action. All of the documents of record must be read together in order to quiet title. By analogy, if the court had been asked to determine who owned what interests pursuant to the 1976 assignment, then clearly the court could only consider that document. However, in the instant case, where the Harders ask the court to quiet title as to the present ownership of the royalty interests, the court must necessarily consider all of the documents of record to determine current ownership.

When the ultimate issue is to determine the effect of more than one document in the chain of title, all of the relevant documents of record must be considered as a whole. If, when read together, the documents are inconsistent or ambiguous, parol evidence is admissible to cure the ambiguity.

In *Hall v. Mullen,* 234 Kan. 1031, 678 P.2d 169 (1984), the plaintiff sought to quiet title to oil, gas, and mineral interests, including

royalty interests, in a quarter section of land. The plaintiff argued that the trial court erred in considering parol evidence to interpret a number of instruments, including a 1942 pooling agreement and a series of instruments and deeds executed in 1950. The Supreme Court held:

"[F]acts and circumstances existing prior to and contemporaneously with the execution of these instruments are admissible to clarify the intention of the parties. In addition, the instruments executed in 1950 were all part of the same transaction intending to convey the property in question to the two brothers and therefore must be construed together to determine the intent of the parties to the transaction. Just as the meaning of a written contract should not be ascertained by a critical analysis of a single or isolated provision, but by a consideration of all the pertinent provisions, the quitclaim deed involved here may not be singled out and held to be dispositive of the issue of the parties' intent. Rather, the provisions of these instruments must be considered equally and construed in harmony with each other." 234 Kan. at 1039.

In the present case, because the documents at issue created an ambiguity in the chain of title, the court properly denied summary judgment as to both parties. See *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 483, 807 P.2d 71 (1991). The Waglers' argument that subsequent conduct by the parties may be considered need not be addressed because the documents, when construed together, were ambiguous, necessitating the introduction of parol evidence.

Sufficient evidence exists in the record to support the court's conclusion that Raymond intended to convey ⅓ of whatever royalty interest he had to each of his brothers and that Glen and Charles Wagler each intended to own, and do own, ⅓ of the term royalty interest on the land, less the term interest they conveyed back to their brother Raymond, the Harders' predecessor-in-title.

Affirmed.