(884 P.2d 736)

No. 71,421

In the Matter of the Marriage of RON D. WADE, *Appellant*, and KATHERINE SUE WADE, *Appellee*.

Opinion filed November 18, 1994.

*Ronald P. Wood*, of Gates & Clyde, Chartered, of Overland Park, for appellant.

*Lee H. Tetwiler*, of Winkler, Lee, Tetwiler & Domoney, of Paola, for appellee.

Before BRISCOE, C.J., GERNON, J., and ROBERT H. MILLER, Chief Justice Retired, assigned.

GERNON, J.: This is a divorce action in which Ron D. Wade appeals from a district court order dividing the marital assets of

the parties and awarding maintenance to his former wife, Katherine Sue Wade.

Ron and Katherine Wade were married on March 27, 1982. They had two children, Jacob Andrew, born October 30, 1985, and Ashleigh Ann, born November 12, 1982. On September 7, 1993, Ron petitioned the court for a divorce on the grounds of incompatibility. Katherine filed a counter-claim alleging the same grounds.

The trial court granted the divorce after granting Katherine's motion to bifurcate the issues in the case. That same day, a hearing was held on property division and maintenance issues.

Evidence presented by the parties at the hearing revealed that at the time of the divorce, Ron was 42 years old and served as the vice president of Wade Agricultural Products in LaCygne, Kansas. Katherine was 31 years old and cleaned homes for a living. Ron earned approximately $31,000 in 1993. Katherine's income was approximately $1,200 per month, or $14,400 per year.

The parties lived in an earth contact home with a fair market value of $92,500. The property is part of a quarter section of land that was originally owned by Ron's parents, Ivan and Barbara Wade. In 1984, the Wades transferred title to the real estate to their corporation, Wade Farms, Inc., with a reservation in the deed for two houses which already existed on the property. One of these homes was the house in which Ron and Katherine resided during their marriage.

The deed purported to transfer the property to the corporation while "[e]xcepting therefrom a lifetime estate in the personal residences separately occupied and lived in by Gwendolyn L. Gooding [Ron's sister] and Ron D. Wade."

Ron and Katherine did not pay anything to live in the house while they were married, but they did pay property taxes and maintain homeowners insurance.

Wade Farms, Inc., is a closely held Kansas family farm corporation with 34,000 shares of capital stock. Ivan and Barbara Wade each own 5,372 shares (15.8% of total stock each, or together 31.6% of total shares), while their children, Ron D. Wade, Gwendolyn L. Gooding, and Carolyn D. Shoemaker, each own

7,752 shares (22.8% of total stock each, or together 68.4% of total shares). Wade Farms, Inc., owns 357 acres of agricultural land in Miami and Linn Counties, which is worth approximately $360,000.

Ron's present-day interest in Wade Farms, Inc., was valued at $56,750. With the exception of the parties' marital residence, Ron has no assets other than his personal effects and a bank account that also lists his parents and Katherine as owners. His vehicle and all related expenses, as well as his life and health insurance, are provided by his employer. Ron also receives an annual bonus of approximately $1,700.

The issues raised at trial centered around the parties' marital residence and how it could be fairly divided. Ron argued that the language in the deed purporting to give him a life estate in the house was ineffective, and, therefore, he had no interest in the house which could be divided. Katherine maintained that the language created a life estate in Ron and that she was entitled to half of the value of this interest.

The trial court found that the deed effectively conveyed a life estate in the houses on the property to Ron and his sister Gwendolyn. The court noted that any doubt regarding this issue was put to rest by Barbara Wade, one of the grantors, and Mr. Brouillette, the scrivener of the deed, who both testified that *the clear intent of the parties at the time of the creation of the deed was to reserve a life estate in the homes of the children during the children's lifetimes.*

The court awarded Katherine the parties' automobile, one-half of the household furnishings, and one-half of the value of Ron's life estate in the marital residence. The value of Katherine's one-half interest in the life estate was determined to be $38,112. Ron was awarded his stock in Wade Farms, Inc., one-half of the household furnishings, one-half of the value of his life estate in the residence, and possession of the residence. Katherine's interest in the marital residence was secured by a lien upon the real estate and upon Ron's stock in Wade Farms, Inc. The court provided that Katherine's interest in the house could be discharged in one lump sum payment by Ron, or in five annual installments, with

accumulated interest at the rate of 5% per annum, or by equal monthly installments for 60 months, with interest at the rate of 5% per annum.

Regarding maintenance, the trial court found as follows:

"Due to the length of this marriage, the relative earning capacities of the parties and the lifestyles of the parties and in light of the property division set out above, an award of maintenance in the amount of $3,400 per year for four years is fair in this case. This will allow Katherine the opportunity to better her education and her ability to earn a living. She entered this marriage at a very young age which prevented her from educational pursuits and opportunities she had right after high school. Maintenance may be paid monthly in the amount of $283.33 for 48 months through the office of the clerk of the court."

Ron appeals from the court's order dividing the marital assets and awarding Katherine maintenance.

Ron argues that the trial court erred as a matter of law in determining that he possessed a life estate in the property at issue. The deed from Ivan and Barbara Wade to Wade Farms, Inc., purported to transfer the property to the corporation while "[e]xcepting therefrom a lifetime estate in the personal residences separately occupied and lived in by Gwendolyn L. Gooding and Ron D. Wade."

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by the court on appeal." *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 455, 827 P.2d 24 (1992). "When interpreting conveyances, courts first look at the language used within the four corners of the instrument in an attempt to determine the intent of the parties." *Harder v. Wagler*, 17 Kan. App. 2d 403, 408, 838 P.2d 366, *rev. denied* 251 Kan. 938 (1992). Where there is no ambiguity or uncertainty in a deed and the grantor's intention is clearly and unequivocally expressed therein, there is no occasion for employing rules of judicial construction. *Sporn v. Overholt*, 175 Kan. 197, 199, 262 P.2d 828 (1953).

Ron does not argue that the language purporting to reserve a life estate in himself and his sister is ambiguous but, rather, that it is ineffective to convey a life estate in favor of Ron because he was a stranger to the deed. Ron contends that no interest or estate

in land may be created in favor of a stranger to the title by means of a reservation or exception in the conveyance.

An exception is a provision in a deed that excludes from the operation of the grant some physical part of the grantor's real estate which would otherwise pass to the grantee under the general terms of the grant. A reservation does not affect the basic conveyance of the real estate in question but, instead, reserves or re-creates in the grantor a new estate or interest which arises out of the land which has been conveyed. See generally 6A Powell on Real Property § 899(3)(g) (1994). The conveyance at issue in the present case is a reservation.

Ron relies primarily upon a law journal article: Harris, *Reservations in Favor of Strangers to the Title*, 6 Okla. L. Rev. 127 (1953). The article focuses on the evolution of a common-law rule of feudal origin, namely, that no interest or estate in land may be created in favor of a stranger to the title by means of a reservation or exception in the conveyance thereof. This rule resulted from the general principle that words of grant or conveyance are essential to pass title by deed, and therefore, terms such as "subject to," "reserve," "except," and their generic derivatives fail to qualify as words of grant because they are insufficient in and of themselves to evidence the necessary intention to pass title. 6 Okla. L. Rev. at 132-33. The author describes the extent to which courts in this country have deviated from or circumvented the common-law rule forbidding reservations to strangers and concludes that any rule which can only operate to defeat a grantor's intention is undesirable and should be discarded unless some overriding public policy requires its retention. 6 Okla. L. Rev. at 134-50. "It is difficult to perceive any overriding public policy to support the common-law rule because, as pointed out earlier, the rule condemns only the method of transferring title, rather than the transfer itself." 6 Okla. L. Rev. at 154.

The difficulty in allowing a grantor to reserve an interest in favor of a third party stems from the notion that the term "reservation" meant that the grantor kept part of the interest or estate conveyed for himself or herself. The fallacy underlying this argument can be explained as follows:

"But why is it necessary to dwell on the unfortunate use of a particular word? Why can the grantor not be allowed to accomplish in one step what obviously can be accomplished in two? Certainly it is clear that the grantor meant to grant two separate interests to two separate people. If the transaction is so viewed, then the grantor is merely making two grants in the same document, which seems legitimate. If this were not possible, then it would be impermissible for a grantor to convey, in the same deed, a life estate to one person and a remainder to another.

"Recent decisions show a marked tendency toward the rejection of the traditional doctrine. [Citations omitted.] In these cases, the fact that the conveyance grants or reserves an interest in a third person does not automatically invalidate the interest. If the grantor's intent is clear, the interest is properly conveyed to the third person. . . . However, there remain significant decisions which reject this approach and which continue to endorse the rule that a deed may not reserve an interest in favor of a person other than the grantor. [See, *e.g.*, *Estate of Thomson v. Wade*, 69 N.Y.2d 570, 516 N.Y.S.2d 614, 509 N.E.2d 309 (1987).]" 6A Powell on Real Property § 899(3)(g).

Kansas has not addressed the issue of whether a grantor can reserve an interest in a third party who is a stranger to a deed. However, the law is clear that the cardinal rule in interpreting the effect of a deed is to ascertain the intent of the grantor. "[E]very conveyance of real estate shall pass all the estate of the grantor therein, *unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant.*" (Emphasis added.) K.S.A. 58-2202. In ascertaining whether a conveyance is or is not effective and, if it is effective, what that effect is, the *intent* of the conveyor is an important and often decisive factor. *Winsor v. Powell*, 209 Kan. 292, 302, 497 P.2d 292 (1972); *Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, 572, 331 P.2d 577 (1958). Moreover, as noted by the trial court, a life estate may be created by any words clearly indicating the intention. *Bennett v. Humphreys*, 159 Kan. 416, 420, 155 P.2d 431 (1945).

Ron cites *Ahnert v. Ahnert*, 98 Kan. 773, 160 Pac. 203 (1916), and *Brown v. Ulmer*, 110 Kan. 504, 204 Pac. 1007 (1922). Neither of these cases is relevant to the present discussion. *Ahnert* involved a deed which reserved the rents, issues, and profits of certain land to the grantor for his life, and after his death to his wife for her life. The court held that the widow of the grantor took no title to the wheat grown on the land, which was harvested,

threshed, and placed in granaries before her husband's death. 98 Kan. at 774.

In *Brown*, the court held that where a grantee accepts and records a deed containing a specific reservation of the oil and gas rights in the land, takes and holds possession of the land for a period of years under the deed, and, thereafter, executes mortgages upon it, the grantee is estopped to assert that the reservation was improperly inserted in the instrument or that it was not a binding exception. 110 Kan. at 505-06. Neither *Ahnert* nor *Brown* involve a reservation in favor of a true stranger to the deed.

The language at issue leaves no doubt that Ivan and Barbara Wade intended to reserve a life estate for two of their children in the two houses that existed on the parcel of land they conveyed to the corporation. Their use of the term "excepting" rather than "reserving" is only a technical defect, and Ron's argument that because of this language no interest was created places form over substance. See 6A Powell on Real Property § 899(3)(g) ("Although the word 'exception' and 'reservation' have two distinct historical meanings, the common usage today has tended to ignore or even disavow the distinction.").

Even if the use of the wrong term does create an ambiguity, extrinsic evidence in the form of Barbara Wade's testimony and the testimony of the attorney who drafted the deed clearly establishes that the parties intended to give the property to the corporation but wanted to preserve their children's interests in the houses for the remainder of the children's lives. As stated by the court in *Davis v. Vermillion*, 173 Kan. 508, 510, 249 P.2d 625 (1952),

"[a] rule for the construction of deeds as well as wills, to which all other rules are subordinate, is that the intention of the grantors as garnered from all parts of the deed is to be given effect, and that doubtful or inaccurate expressions in a deed shall not override the obvious intention of the grantors. In construing a deed, the court puts itself as nearly as possible in the situation of the grantors when they made the deed and, from a consideration of that situation and from the language used in each part of the deed, determine as best it can the purpose of the grantors and the intentions they endeavored to convey."

The trial court did not err in finding that the deed at issue effectively conveyed a life estate to Ron in the house where he and Katherine lived during their marriage.

Ron next contends that the trial court determined the value of the life estate based upon improper evidence. Katherine was allowed to testify as to the present fair market value of the residence and the value of the life estate Ron held in the residence. An objection was made by counsel for Ron, contending that Katherine was testifying from a writing of a certified public accountant (CPA).

The information was finally admitted after Katherine's attorney asked her on direct examination if she had a personal opinion as to the value of the life estate in the residence. Ron's counsel objected after the answer was given. The court allowed Katherine to testify as to what her opinion was but also noted that it knew that the value testified to was based upon information Katherine had received from a CPA.

We note two things from the record. First, the exhibit referred to had already been introduced into evidence with regard to the fair market value of the real estate. The appraisal was done by Crown Realty. The function of the local CPA was to make a calculation of the life estate based upon the value of the Crown Realty appraisal. Second, these were the only appraisals or values presented to the court.

The court accepted the appraised value and the CPA's calculation based upon a stipulated admission of the federal estate tax table by Ron's counsel.

Although the better practice would have been to have the CPA testify to lay a foundation, what occurred, given the admission of the appraisal and the stipulation of the federal estate tax tables, does not rise to reversible error.

Ron also contends that the trial court erred in ordering him to pay Katherine half of the value of the life estate as well as maintenance. He argues that the court should not order him to pay something which he has little or no ability to pay on his own

accord. Specifically, Ron was ordered to pay Katherine a lump sum of $38,112, which could be paid in five annual payments of $7,622.40, with accumulated interest at 5% per annum, or in monthly payments of $635.20, with interest at the rate of 5% per annum. In addition, Ron was ordered to pay Katherine maintenance in the amount of $3,400 per year for four years, or $283.33 per month.

K.S.A. 1993 Supp. 60-1610(b)(1) provides:

"The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts, by: . . . (B) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum . . . . In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property."

K.S.A. 1993 Supp. 60-1610(b)(2) states that the trial court "may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances." The determination of maintenance and the division of property should be made at the same time for, although they are separate and distinct concepts, neither can be intelligently fixed by itself without giving appropriate consideration to the other. *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 675, 827 P.2d 1222, *rev. denied* 251 Kan. 938 (1992).

Many of the statutory considerations relating to the division of property are required by case law to be considered in the determination of maintenance. 16 Kan. App. 2d at 670-71. Factors which may be considered include the age of the parties; their present and prospective earning capacities; the parties' needs; the time, source, and manner of acquisition of property; family ties and obligations; and the parties' overall financial situation. *Powell v. Powell*, 231 Kan. 456, 460, 648 P.2d 218 (1982); 16 Kan. App. 2d at 671.

On appeal, once it is established that the statutory factors regarding distribution of property were considered by the trial court, the exact manner in which the court weighed the factors will be reviewed by an abuse of discretion standard. See *In re Marriage of Sadecki*, 250 Kan. 5, 13-14, 825 P.2d 108 (1992); *Parish v. Parish*, 220 Kan. 131, 134, 551 P.2d 792 (1976) ("The trial court has wide discretion when it comes to matters relating to alimony, and its judgment in awarding alimony will not be disturbed absent a clear abuse of discretion."). "Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

The record reflects that Ron earned $31,000 in 1993. This income figure does not include his free use of a vehicle, as well as health and life insurance benefits, which were all paid for by the corporation. He also receives an annual bonus of approximately $1,700. Ron was awarded stock valued at $56,750, half of the value of the life estate, and possession of the house.

It is important to note that, as the holder of a life estate in the property, Ron can live on the property at no cost. The fact that the interest to be divided in this case is a life estate rather than a fee simple estate is irrelevant; Katherine is entitled to fair and equitable division of all the marital property. "It is not the function of this court to retry divorce cases and divide property between husband and wife." *Darr v. Darr*, 194 Kan. 593, 595, 400 P.2d 721 (1965). The trial court did not abuse its discretion in awarding Katherine half of the value of the life estate.

We conclude that the trial judge molded an order which was both flexible and fair. While another judge might have awarded a different amount or made a different division of property, we find no abuse of discretion.

With regard to maintenance, the court stated that $3,400 per year for four years was appropriate considering the length of the marriage, the relative earning capacities of the parties, the lifestyles of the parties, and in light of the property division. The

court noted that the award would allow Katherine the opportunity to better her education and her ability to earn a living as she "entered this marriage at a very young age which prevented her from educational pursuits and opportunities she had right after high school." Ron fails to demonstrate a clear abuse of discretion.

Finally, Ron objects to the court's decision to trifurcate the proceedings by first granting the divorce and then separately considering property and maintenance issues before addressing child custody matters. Ron argues that the proceedings should not have been split up and that maintenance should not have been ordered until such time as all issues that might affect the financial situation of the parties were determined.

The practice of granting a divorce and later considering property division, maintenance, and child support issues has become a relatively common practice in Kansas trial courts. See, *e.g.*, *In re Johnson*, 251 Kan. 826, 840 P.2d 515 (1992); *McCain v. McCain*, 219 Kan. 780, 782-83, 549 P.2d 896 (1976) (in a divorce case where the trial court bifurcates its ruling and causes the decree of divorce to be entered on a date different from that upon which it enters final rulings on other issues in the case such as child custody, alimony, and division of property, the entry of whichever order is later fixes the date from which the time for taking an appeal runs). Any rulings made regarding maintenance would be taken into consideration by the court when deciding child custody and support matters. See generally Kansas Child Support Guidelines (1993 Kan. Ct. R. Annot. 71).

We find no abuse of discretion by the trial court in deciding to consider the relevant issues in a trifurcated manner.

Affirmed.