NOT DESIGNATED FOR PUBLICATION

No. 128,159

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
DULCE E. RODRIGUEZ-HERRERA,
*Appellee*,

and

ANTONIO PEREZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed February 6, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*Sarah Doll Heeke*, of Doll Law Firm LLC, of Dodge City, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM: Antonio Perez (Husband) appeals the district court's division of property as part of a divorce proceeding. Husband believes the district court's property disposition was not supported by substantial competent evidence. Because we find that the district court failed to take into consideration that Husband sold an asset included in the property distribution findings before the property valuation date and also failed to consider subsequent payments made on one of the debts, we reverse the district court's property distribution, and remand to the district court to correct the two noted errors. All other rulings are affirmed.

1

In early May 2020, Dulce Rodriguez-Herrera (Wife) filed for divorce from Husband. This appeal deals only with the division of property by the district court. The briefed issues related to custody of the children and child support were mutually resolved in advance of this court's decision.

Husband's automobile repair business was the couple's main source of income, as well as his "hobby" of buying and selling vehicles. Husband often co-mingled his personal and business assets, particularly the vehicles he purchased and sold. The parties agreed that a valuation date of May 5, 2020, would be used for property distribution.

Upon the filing of Wife's petition, the district court entered temporary orders only two of which are at issue here. The court ordered Husband to pay Wife $500 per month of spousal maintenance, beginning in June 2020. And the court granted Wife "temporary use and exclusive possession" of a "2015 Mercedes Benz ML250" owned by Husband, ordering him to "immediately turn the vehicle and any keys over to [Wife]." Relevant to this obligation, the court's temporary order contained the following general provisions:

"14.   The parties are restrained and enjoined from canceling any utility services and/or deposits or canceling or modifying (including changing, adding, or deleting beneficiaries) of any existing pension benefits, IRA's, Keogh plans or any other retirement plans or benefits, profit sharing benefits, employment benefits, medical, health, automobile, homeowner's or renter's, life, or disability insurance coverages or any pay on death and/or transfer on death designees or any other asset owned by either of the parties involving any family members or their property.

"15.   Until both parties have the opportunity to present their views and evidence, each of the parties are hereby restrained from withdrawing, selling, altering, removing, spending, mortgaging, pledging, encumbering or otherwise disposing of any of their assets except those needed for day to day living expenses and the regular

2

payment of already existing installment indebtedness or in order to comply with the orders of this Court."

In early January 2021, Wife filed a motion seeking contempt orders against Husband, alleging he failed to pay spousal maintenance as required by the temporary orders. Wife also requested an additional monetary sanction against Husband for his noncompliance and for him to pay her resulting attorney fees. The court set a hearing for the next month.

Before that hearing took place, Husband moved to modify the temporary orders to reduce his spousal maintenance obligations. Husband also requested the court "modify the order which requires him to pay all vehicle insurance payments and monthly payments for the 2015 Mercedes." And because he was "financially unable to pay for [Wife]'s bills as well as his own," Husband asserted that "should the court order [him] to make these payments, he should be given credit on the child support worksheet as these payments are essentially spousal maintenance." Husband attached a domestic relations affidavit to his motion reflecting his gross income was only $14,550 per year, as opposed to the $94,605 amount included on Wife's domestic relations affidavit submitted with her divorce petition. Further, Husband requested the matter to be heard at the same time as the contempt hearing.

A bifurcated, three-day evidentiary hearing occurred over three years *after* the filing of the divorce petition. The only dispute brought forward on appeal centers on the court's property division ruling. In particular, Husband disputes the values of some of the items listed on Wife's proposed property division sheet, as well as their existence on the valuation date.

Husband disputes the following regarding the final court order:

3

VALUATION OF HUSBAND'S CASH ON HAND AS $7,000—Although Wife did not testify on this point, during Husband's cross-examination her attorney introduced into evidence a balance sheet from a loan Husband obtained in September 2022, which showed he had $7,000 "Cash on Hand" and $8,538 "Cash in the Bank" at that time. Husband, however, testified that he had only $400 in cash on hand on the valuation date, with an additional $1,321.39 in his bank account based on a May 2020 bank statement listing his daily ledger balances for that entire month.

VALUATION OF HUSBAND'S VEHICLES—Husband was in the business of buying and selling cars. Wife's proposed property division included a 2005 Volkswagen Jetta valued at $2,156; a 2015 Volkswagen Golf valued at $24,127; a 2017 Honda Civic valued at $19,026; a 2015 Volkswagen Passat valued at $9,901; and a 2003 Jeep Grand Cherokee valued at $2,592. Husband objected to these values being derived from Kelley Blue Book, but he made no further objection to this testimony.

Husband claimed those five vehicles had much lower values. He testified that he sold the 2005 Volkswagen Jetta in September 2020 for $1,200, providing a copy of the transfer of title form as proof. He added that in the same month, he traded three of the vehicles for a new pickup truck, receiving the following amounts: $21,416 for the 2015 Volkswagen Golf; $4,584 for the 2017 Honda Civic; and $4,000 for the 2015 Volkswagen Passat. As support, he presented the invoice for the purchase. Finally, Husband said he had "no idea" about the 2003 Jeep Grand Cherokee because he did not "have that vehicle at the time." He believed it was "a vehicle that I helped a friend to buy . . . way before all this."

OWNERSHIP OF OTHER ASSETS—Wife's proposed property division included a 2008 Load Trail trailer valued at $6,000; a dirt bike valued at $1,000; and a four-wheeler valued at $1,000. Like the other vehicles, Wife testified Husband owned them when they separated—in March 2020. Husband testified he sold the 2008 Load Trail trailer in

4

December 2019 for $900, as shown by a bill of sale for the trailer admitted into evidence. As for the dirt bike and four-wheeler, Husband agreed he sold both items for $1,000 but he denied owning either the dirt bike or the four-wheeler on the valuation date.

LOANS—Wife's proposed property division also included an "FNB Loan 24199" as one of Husband's assigned debts, valued at "$77,179.14." While Wife did not testify about this account, Husband's testimony on cross-examination showed it referred to a First National Bank loan he used to purchase a tow truck in January 2020 for $82,496.78. A bank statement showing the transaction history for the account was admitted without objection. Husband acknowledged that the exhibit showed a $77,341.10 balance due on May 15, 2020, despite his own proposed property division exhibit listing the same account as having a balance of $78,554.96. According to Husband, the bank statement did not show "the real number."

THE MERCEDES AND INSURANCE ON THE MERCEDES—After testifying that Husband paid no spousal maintenance because he "didn't think it was fair and because she wasn't my wife," Wife acknowledged that he "made the payment for the Mercedes and for the insurance." She also stipulated that she would be okay with the court considering those payments to be equivalent to spousal maintenance. Husband believed that he was "ordered to pay monthly the monthly Mercedes payment as part of [the] temporary orders," and he did.

In its ultimate ruling, the district court found Husband in contempt for nonpayment of child support and spousal maintenance because he presented no contrary evidence showing he had met those obligations. But the court also granted Husband's motion for modification based on the evidence showing he had a much lower income than originally alleged by Wife. The court explained that the modification would relate back to February 2021, the month after he filed the request—so he would still be

5

responsible for unpaid child support and maintenance under the temporary orders until that date.

As for property division, the court said it would "equitably divide the property" by taking several factors into consideration, including:

> "[T]ime and manner of acquisition of the property, who owned when, the length of the relationship and marriage, the ages of the parties, the duration of the marriage, the duration of the relationship, property owned by the parties, the present and future earning capacities, the time, source and manner of acquisition of the properties, family ties and obligations, the allowance of maintenance and lack thereof."

The district court also explained that Husband would not be responsible for continuing spousal maintenance as of the modification date. The court then gave a detailed explanation of the assets and debts in its property division, which it later memorialized in a final order in February 2024. Relevant to the issues presented here, the court said it was adopting most of Wife's proposed values for the parties' assets and debts, particularly when designating the following assets to Husband:

- Cash on hand, valued at $7,000
- 2019 International MV, valued at $45,000
- 2005 Volkswagen Jetta, valued at $2,156
- 2015 Volkswagen Golf, valued at $24,127
- 2017 Honda Civic, valued at $19,026
- 2015 Volkswagen Passat, valued at $9,901
- 2003 Jeep Grand Cherokee, valued at $2,592
- 2008 Load Trail trailer, valued at $6,000
- Dirt bike, valued at $1,000
- Four-wheeler, valued at $1,000.

The district court also said it would assign "FNB Loan Number 2," identified as FNB Loan 24199 on the final order, to Husband, valuing the debt at $76,244.84. Based on the other assets and debts included in the property division ruling, the district court concluded that Husband would need to pay an $1,855 equalization payment to Wife.

Before concluding the hearing, Husband's counsel asked about the vehicles which Husband had testified were no longer in his possession as of the valuation date, suggesting those assets should not be included in the marital estate. Wife's counsel disagreed, asserting the evidence was controverted on that point because Wife had testified those assets existed at the time of separation and the filing of the divorce.

In March 2024, Husband filed a motion for reconsideration of the district court's final order, raising several claims. Most relevant to this appeal, Husband argued he should receive "a credit to his obligations under the temporary order" because of the "$18,947.76 paid by him for [Wife]'s benefit by paying her car payment and her insurance," but also that the court's property division ruling should be adjusted because the values of some assets and debts were "contrary to the competent evidence at trial."

At a hearing in April 2024, the parties presented their arguments on Husband's motion. Although the district court did modify the child support obligation, the court declined to reconsider its property division ruling, explaining that the Mercedes payments were "part of the whole equation that was presented, and if I didn't reference it, it was just an oversight and not referenced." As for the values of the other items challenged by Husband, the court explained "I don't find any evidence that was missed to change or modify the order."

Husband's counsel asked the district court if the "$18,900 should then go in the [Wife]'s column as an asset then and so that would erase the $1,800 [equalization payment] plus some, is that correct?" Wife's counsel disagreed, stating that "[i]t was a

7

voluntary payment he was making on an actual asset," so Husband should not get credit for those payments, but added that Husband's initial argument was only that it should offset past-due spousal maintenance. The court stated:

> "Bottom line is, I'm finding that it was contemplated—all the evidence was contemplated at that time and I did my best to make an equitable division of the property, contemplating all the evidence presented as to the property itself, as well as any payments, et cetera, that the Respondent had been making as well. So that's the order of my Court. That's the order of the Court. Okay?"

The district court entered a written order on the motion for reconsideration in May 2024, memorializing its findings as stated on the record.

Husband timely appealed.

ANALYSIS

Appellate courts review a district court's property division ruling for abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

When a district court makes factual findings related to a property division ruling, appellate courts review those findings for substantial competent evidence. See *In re Marriage of Wherrell*, 274 Kan. 984, 987, 58 P.3d 734 (2002). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). When reviewing for substantial competent evidence, this court must not

8

weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 317 Kan. at 41.

*The district court did not act unreasonably by refusing to credit Husband for car payments he made during the divorce proceedings.*

Husband first argues that the district court failed to properly account for $18,947 he paid in relation to a 2015 Mercedes Benz ML250 while the divorce case was pending. His objection is unclear because it appears he wants this court to review the lack of a "credit" for the payments either as an excessive contempt sanction, or as something "lost in the mix" that should have been assigned as one of Wife's assets in the court's final property division.

Contrary to Husband's first suggestion, the district court did not refuse to offset his child support and spousal maintenance arrearages by applying a credit for the payments as a contempt sanction. To start, the parties' mutual confusion about whether the temporary orders required Husband to make monthly car payments and maintain the insurance coverage on the 2015 Mercedes Benz ML250 is evident from their briefs and the record. The only direct mention of the vehicle in the court's temporary ex parte order was to give Wife "temporary use and exclusive possession" and for Husband to "immediately turn the vehicle and any keys over to [Wife]." Even though the court did not explicitly order Husband to make monthly payments or maintain insurance *for that specific vehicle*, other general provisions in the order prevented either party from "canceling or modifying" automobile insurance coverages related to the parties' assets or "encumbering or otherwise disposing of any of their assets."

Given the undisputed trial evidence that Husband was the vehicle's legal owner, this court can easily conclude that Husband would have been in noncompliance with these provisions had he stopped making those monthly payments. Failing to pay the insurance would have resulted in the policy being cancelled and failing to make monthly

installment payments could have led to the vehicle being repossessed, both which would have encumbered Wife's use and possession of the vehicle. More to the point, Husband admits in his brief that he never intended these payments to cover his spousal maintenance obligations. He also acknowledges the payments could not offset his unpaid child support, even after the district court retroactively granted his modification request back to the date he filed the motion.

But Husband's attempt to frame the denial of a credit as a contempt sanction fails for a more fundamental reason:  it was not properly briefed. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (issues not adequately briefed or points raised incidentally in a brief and not argued should be deemed waived or abandoned). Put simply, Husband's concern about an improper contempt sanction is inadequately briefed because he fails to apply—or even recite—the appropriate standard of review for such a claim. See *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014) (noting dual standard of appellate review for contempt orders which requires de novo review of contempt determination and reviewing imposition of sanctions for abuse of discretion). Accordingly, we find Husband waived any argument that stemmed from the district court's contempt ruling or resulting sanctions.

Husband's second suggestion that the payments were "lost in the mix" and should result in the property division being recalculated does not fare much better. Husband correctly explains in his brief that this new argument originated in the waning moments of the hearing on Husband's motion for reconsideration. Up until that point, Husband had exclusively asked the district court for a credit against his unpaid child support or spousal maintenance under the temporary orders. But in declining to grant that credit, the court explained the payments were "part of the whole equation that was presented" and suggested the lack of a specific reference on the property division could have been an "oversight." Husband's counsel then asked for the vehicle payments to be reflected on the property division breakdown as an asset, prompting a challenge by Wife's counsel. The

court responded by repeating that it had "contemplated" all the evidence presented in making an equitable division of the marital property. The court's written journal entry on the motion for reconsideration then states simply that it was denying the motion "for the reasons set forth on the record."

Contrary to Husband's assertion, this exchange suggests that the payments were not "lost in the mix" because the district court made it clear that it had considered the payments along with the other evidence presented at trial. Yet despite setting out the correct standard of review for property division rulings in his brief, Husband makes no meaningful attempt to apply that standard to challenge this finding by the court. He does not assert a claim of legal or factual error, nor does he explain how the court's property division ruling was unreasonable. For that reason, we deem his "lost in the mix" argument abandoned.

*Some of the district court's findings relating to the values of certain assets and debts were not supported by substantial competent evidence.*

Husband next challenges the values of several assets and one debt in the property division ruling.

As stated, the district court has broad discretion in dividing marital property. *Wherrell*, 274 Kan. at 986. The division of marital property must be just and reasonable, but it need not be equal. The district court has broad discretion to determine what is just and reasonable. *In re Marriage of Rodriguez*, 266 Kan. 347, 353-54, 969 P.2d 880 (1998). Discretion is abused only where no reasonable person would take the view adopted by the court. *In re Marriage of Sadecki*, 250 Kan. 5, 8, 825 P.2d 108 (1992).

Under K.S.A. 23-2801(a), all property of married persons becomes marital property upon commencement of divorce proceedings. *In re Marriage of Meek*, 320 Kan.

11

313, Syl. ¶ 2, 567 P.3d 252 (2025). The district court must consider the following factors when making its division of marital property:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 23-2802(c).

The statute which governs the valuation and division of property in divorce actions does not specify a method for the district court to use in determining value. K.S.A. 23-2802. But because a district court's factual findings must be supported by substantial competent evidence, the values that the district court assigns to marital property should be within the range of evidence before the court. See *Wherrell*, 274 Kan. at 987; *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 509, 839 P.2d 541 (1992).

*Cash on hand*

Husband first contests the district court's determination that the marital property included $7,000 in "cash on hand," arguing the only evidence presented by Wife on this point showed a cash amount after the agreed-upon valuation date. He refers to Petitioner's Exhibit 4, which was a balance sheet submitted by Husband in September 2022 for a loan, and argues this evidence was not relevant because it was "too distant in both time and context." Thus, he contends the only competent evidence on this point was his own testimony that he had $400 in cash on hand on the valuation date.

Wife responds generally that Husband's testimony lacked credibility and the documents he provided showed different values for various assets. She also asserts that

Husband's argument about the cash is "misguided" because K.S.A. 23-2802(b) allows courts to "consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property." Thus, she asserts the $7,000 value was appropriate given both "the significant passage of time between the filing of the divorce action and a final hearing," and Husband's "constant dissipation and acquirement of assets during that time."

In further support of the district court's ruling, it assigned a $1,321 value for "Cash in Bank" to Husband. That amount was based on a May 2020 bank statement listing Husband's daily ledger balances for that entire month. Like the cash on hand value, Wife had proposed a higher value of $8,538 based on the same September 2022 balance sheet admitted as Petitioner's Exhibit 4. It seems apparent that the court weighed the evidence presented by both parties and strived to strike a balance by adopting a total cash value near the average of the total values the parties proposed. For that reason, we conclude that the "cash on hand" value was within the range of evidence available to the court.

*Vehicle values based on Wife's valuation*

Husband next contests the district court's determination of the values of five vehicles assigned to Husband, arguing the values adopted by the court were derived through a "charade" on Wife's part. He explains that Wife testified about her "belief" of the values immediately after the court sustained a foundation objection to relying on the Kelley Blue Book to derive the correct values. In particular, the vehicles were:  a 2005 Volkswagen Jetta valued at $2,156; a 2015 Volkswagen Golf valued at $24,127; a 2017 Honda Civic valued at $19,026; a 2015 Volkswagen Passat valued at $9,901; and a 2003 Jeep Grand Cherokee valued at $2,592.

Parties are competent to provide opinion testimony about the value of their own property, even if received from another information source. See *In re Marriage of Wade*,

13

20 Kan. App. 2d 159, 166, 884 P.2d 736 (1994). In *Wade*, the trial court allowed the wife in a divorce action to testify as to her personal opinion of the fair market value of a residence and a life estate held in the residence. On appeal, the panel noted that the wife's testimony was based on information she had received from a certified public accountant (CPA), who also relied on an appraisal already admitted into evidence. The husband's counsel had also stipulated to the admission of a federal estate tax table relevant to the appraisal and CPA calculation.

Here, the district court sustained Husband's lack of foundation objection, which prevented Wife from admitting exhibits showing the Kelley Blue Book values for the contested vehicle values. Even so, while Husband asserts Wife's testimony similarly "should have failed for lack of foundation," he nonetheless admits he made no further objections. Consequently, he waived any potential challenge to appellate review of the admission of Wife's testimony. See K.S.A. 60-404; *In re Morton*, 317 Kan. 724, 739-40, 538 P.3d 1073 (2023). Thus, the district court could rely on Wife's opinion testimony about the value of these five vehicles challenged now by Husband.

*Assets not owned on valuation date*

Husband next contests the district court's inclusion of several assets on the property division that he claims he did not own on the valuation date, including: a 2008 Load Trail trailer valued at $6,000; a dirt bike valued at $1,000; and a four-wheeler valued at $1,000. Wife offers no rebuttal for these assets in her brief, other than arguing that Husband simply disagrees with the district court's decision.

When Husband's counsel asked the district court to clarify why it included these assets despite Husband's testimony, the court stated:

"I will find for the record purposes that things did move around a lot and I really think this is fair and equitable 'cause if they were gone, I'm sure there were some others that replaced them. That's just kind of the way it appears to have happened. But this just is a good snapshot of what he has around, and by her testimony, I believe that they were there."

While Husband is correct that although he contested the ownership of these assets as of the valuation date, he only presented documentary evidence to show that he sold the 2008 Load Trail trailer before that date. Determining whether there was substantial evidence to show he still owned the dirt bike and four-wheeler on the valuation date comes down to a credibility contest between Wife and Husband's conflicting belief testimony. This court cannot reweigh conflicting evidence when reviewing a court's property division ruling. Therefore, we conclude the district court abused its discretion by including the 2008 Load Trail trailer in the marital estate, as that determination was not supported by substantial competent evidence.

*Debt balance*

Lastly, Husband contests the district court's determination of the value of a single debt attributed to him—a First National Bank loan with account No. 24199. He points out that the court assigned it to him with a value of $76,244.84, despite the evidence presented by Wife showing the balance due on the account was $78,426.55 on April 15, 2020, and $77,341.10 on May 15, 2020. Given the agreed-upon valuation date, Husband asserts the court's assigned value was too low because it should have been somewhere in this range. Wife also does not mention this item at any point in her brief, other than repeating the general argument that Husband simply disagrees with the district court's decision.

Based on the only evidence in the record showing a value for this debt—a bank record subpoena exhibit provided by Wife—Husband is correct that the value assigned by

the district court is not supported by substantial competent evidence. According to that exhibit, the last payment Husband made before the valuation date was on April 15, 2020, resulting in a $78,345.57 balance due on May 15, 2020. The value chosen by the district court appears to be the balance due on July 15, 2020, after Husband had made several payments beyond the valuation date. Therefore, we must reverse the district court's value determination for this item.

In sum, Husband does not establish the district court erred in its property division ruling for all the reasons argued on appeal. But because the court ignored evidence that he sold the 2008 Load Trail trailer before the valuation date and assigned a value for the FNB Loan account No. 24199 beyond the valuation date, those aspects of the property division must be reversed and the case remanded with directions to enter an amended final order.

*Wife's request for appellate attorney fees is denied.*

After this court docketed the appeal, Wife filed a motion requesting appellate attorney fees under Supreme Court Rule 5.01 (2025 Kan. S. Ct. R. at 31) and Kansas Supreme Court Rule 7.07(b) and (c) (2025 Kan. S. Ct. R. at 52), contending that Husband's appeal is frivolous and filed only for the purpose of harassment and delay. Husband responds that Wife's contentions are conclusory and lack specificity, such that he can likewise respond only in a conclusory manner.

A court may only award attorney fees when authorized by statute or by agreement of the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Kansas Supreme Court Rule 7.07(b)(1) (2025 Kan. S. Ct. R. at 52). This court exercises unlimited review over

the question of law of whether a party is entitled to their attorney fees. See *In re Estate of Oroke*, 310 Kan. 305, 317, 445 P.3d 742 (2019).

Under Supreme Court Rule 7.07(c), this court can order a party to pay attorney fees and costs of the other party based on a finding that "an appeal has been taken frivolously, or only for the purpose of harassment or delay." An appeal is frivolous if there is no justiciable question, and it is readily recognized as devoid of merit in that there is little prospect that it can ever succeed. *McCullough v. Wilson*, 308 Kan. 1025, 1037, 426 P.3d 494 (2018).

Husband's appeal was not frivolous. He presented justiciable questions and prevailed on some of his claims by showing that some aspects of the district court's property division ruling were not supported by substantial competent evidence. Thus, we deny Wife's request for appellate attorney fees.

Affirmed in part, reversed in part, and remanded with directions.