(143 P.3d 87)
No. 94,321

IN THE MATTER OF THE MARRIAGE OF JOHN F. CRANE, *Appellant*, and LOLA J. CRANE, *Appellee*.

Opinion filed September 29, 2006.

*James R. Orr*, of Westwood, for appellant.

*Thomas Francis Sullivan*, of Overland Park, for appellee.

Before RULON, C.J., MCANANY, J., and KNUDSON, S.J.

KNUDSON, J.: In this divorce proceeding, John F. Crane appeals the district court's decision to retain jurisdiction over retirement benefits he might receive in the future from his employer. It is uncontroverted John has not been and is not now a participant in a retirement or pension plan at any time during his marriage to

Lola J. Crane. It is also uncontroverted John's employer has no retirement plan for its employees.

We reverse. The district court cannot reserve jurisdiction to divide at some future time a retirement plan that is not in being and never has been in being. The reserve jurisdiction method recognized in *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 769 P.2d 678 (1989), has no application where a retirement plan does not exist.

The underlying facts are not in material dispute. John is 39 years old. Lola is 36 years old. John is senior pastor of a small, nondenominational church, a position he has held for nearly 10 years. The church does not have a retirement plan for employees. However, on the only two previous occasions when a pastor retired, the church did provide each of the pastors with lifetime retirement benefits or monetary gifts. It is apparent from the record that on each of these occasions the decision was made ad hoc at the time of the pastor's retirement, and the church's board of directors have since agreed there will not be any such benefit provided in the future.

Unquestionably, the district court's decision to reserve jurisdiction was influenced by the apparent control John's family exercised over church business. John, his mother, and his brother served as the trustees and directors of the church. Clearly, the decision to provide a retiring pastor with retirement benefits would be theirs to make. Nonetheless, the church is a Missouri not-for-profit corporation with tax exemption under 26 U.S.C. § 501(c)(3) of the Internal Revenue Code, and the district court does not suggest the church's directors have taken action or entered into a tacit agreement to obfuscate what retirement benefits will be provided John when and if he retires as pastor. The district court simply recognized that the circumstances would facilitate a future decision by the board to provide John with retirement benefits.

In its decision from the bench on the division of property, the district court stated Lola's claim as: "[I]t is possible in the future [John] may be awarded a retirement in recognition of his years of service, whether that is 20 or 25 or 30 years of service." Finding resolution of this claim was a "difficult issue," the district court

relied on *Harrison*. The district court understood *Harrison* to hold "it was appropriate in cases where it is difficult to place a present value on the benefits or to determine the needs of the parties for the Court to reserve jurisdiction over the matter of a retirement."

The district court next stated it had "considered the following factors" in reaching its decision. The district court found "[t]he testimony is clear that at the present time, the church does not offer a retirement plan to the existing pastors." The district court next noted John's testimony that such retirement plans would not be offered again. The district court "anticipate[d] that it may be another 20 years before [John's] retirement occurs." It further found that "the amount of such a retirement or its payment if awarded voluntarily by the church is unknown," and that Lola's needs "are unknown."

The district court concluded:

"The Court feels that all these factors justify the Court reserving jurisdiction over the question of whether or not a retirement is going to be paid and what interest her 18 years of marriage would equate to in a retirement plan if and when it is ever granted. So the Court is expressly reserving jurisdiction over the question of whether or not a retirement will exist and if so, its value and if so, what interest if any [Lola] should have in the hypothetical retirement."

The district court's ruling from the bench included additional orders not at issue here on child custody, support, maintenance, and the division of the other marital property. The only remaining question was attorney fees, upon which the district court allowed the parties to submit further briefs. The district court's rulings were then incorporated in a "DECREE OF DIVORCE," filed of record on October 26, 2004.

John moved to alter or amend several of the district court's orders, including the reservation of jurisdiction. The district court denied the motion, making the following statements in the journal entry:

"1. The Court will first address the issues pertaining to the Court's reservation of jurisdiction regarding a retirement program that [John] may have at some point in the future.

"2. The Court has researched this issue and did not find any case on point other than the *Harrison* case.

. . . .

"4. The Court has considered several factors in reaching its decision in this case.

"5. The church of which [John] is a pastor was started by [John's] grandfather (his mother's father).

"6. [John's] family has a significant degree of control over the [C]hurch and its management.

"7. The Court observed that the Church was not going to allow any retirement plan in the future, although it did for its founder, and a subsequent minister.

"8. The Court is concerned that the members of the [C]hurch may want to reward [John] at some point in the future.

"9. It is impossible to devise any formula to divide any such future retirement. By the process of elimination, the Court has tried to balance the equities in this matter.

"10. The Court believes the only remedy is to reserve jurisdiction over this issue.

"11. The *Harrison* case gives the Court latitude to come up with creative alternatives.

"12. The Court recognizes that the Church could determine that no retirement plan is appropriate in the future.

"13. However, if the Church were to say that it appreciated [John's] service and create a retirement plan, in equity Respondent should be entitled to something.

"14. The only way for the Court to be fair is to reserve jurisdiction.

"15. This Court cannot speak for the trial court in the future.

"16. The method, amount, and factors considered by the Church would be considered since there is no retirement benefit allowed the wife.

"17. *Harrison* expresses a method.

"18. This Court will abide by its earlier ruling. The Court recognizes that it is unique and has no qualms about an appeal and awaits what the appellate court will do."

John appeals.

Lola presents the district court's action as an effort to adjust property rights. A district court has broad discretion in adjusting the property rights in a divorce action, and its decision typically will not be disturbed absent a clear showing of abuse. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). John, however, argues in essence that the district court lacked jurisdiction to retain jurisdiction over the retirement issue. Subject matter jurisdiction is a question of law subject to unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006). Whether the district court had jurisdiction turns on

the interpretation of statutes, as John recognizes. The district court's interpretation of statutes is also subject to unlimited review. See 281 Kan. at 374.

Under the Kansas Constitution, district courts "have such jurisdiction in their respective districts as may be provided by law." Kan. Const. art. 3, § 6. Hence, it is the legislature which sets the extent of district court jurisdiction. See *Stephens v. Unified School District*, 218 Kan. 220, 226, 546 P.2d 197 (1975); *Egnatic v. Wollard*, 156 Kan. 843, 851, 137 P.2d 188 (1943); *State v. Jack*, 69 Kan. 387, 392, 76 Pac. 911 (1904), *aff'd* 199 U.S. 372 (1905); *In re Marriage of Myers*, 30 Kan. App. 2d 1223, 1231, 56 P.3d 1286 (2002). It is undisputed which statutes are at issue here: K.S.A. 2005 Supp. 23-201, which defines marital property, and K.S.A. 60-1610(b)(1), which controls the division of marital property in a divorce.

Marital property is "[a]ll property owned by married persons, including the present value of any vested or unvested military retirement pay." K.S.A. 2005 Supp. 23-201(b). John points to the present tense of the statutory language, arguing it refers only to property presently owned by the parties, not to property that might be acquired by one of the parties at some unknown future time.

John makes the same argument regarding K.S.A. 60-1610(b)(1), which states the divorce decree "shall divide the real and personal property of the parties, including any retirement or pensions plans, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." John notes this language focuses on existing property, including retirement plans, and does not contemplate division of property acquired after the divorce.

John's arguments regarding the extent of marital property are persuasive. However, we note the district court did not attempt to divide property John may acquire after the divorce. To the contrary, the district court took a wait-and-see approach, leaving the issue of division, if any, for the future. It is the process, the retaining of jurisdiction, that frames the issue before us. We turn to *Harrison*, the decision relied on by the district court to support its decision to reserve jurisdiction.

In *Harrison*, one of the spouses was within 2 years of eligibility for military retirement pay. The district court divided the marital property without reference to the retirement benefits, which the other spouse argued on appeal was an abuse of discretion. Because the legislature specifically mandated consideration of such benefits in K.S.A. 2005 Supp. 23-201, this court remanded "to the trial court with instructions to consider an equitable division of all of the marital assets, including. . . unvested military retirement pay." 13 Kan. App. 2d at 315-16.

In order to assist the district court on remand, this court discussed two methods of valuing pensions: "(1) present cash value method and (2) reserve jurisdiction method." 13 Kan. App. 2d at 316. Under the present cash value method, the present value is calculated based on mortality, interest, inflation, and tax assumptions, and the distribution is then made at the time of the divorce. See 13 Kan. App. 2d at 316. Under the reserve jurisdiction method, a district court would "determine the formula for division at the time of the decree, but delay the actual distribution until payments are received, retaining jurisdiction to award the appropriate percentage . . . in each payment if, as, and when it is paid." 13 Kan. App. 2d at 316. This approach "has the effect of equally apportioning any risk of forfeiture," because "the benefits can be equitably divided . . . without requiring one spouse to pay out a portion of monies not yet received." 13 Kan. App. 2d at 316.

Nothing in *Harrison* suggests a district court has jurisdiction to delay the final division of property for an indeterminate number of years to see if a spouse will gain a retirement or pension plan not in existence at the time of the divorce. *Harrison* is quite clear that jurisdiction may be retained only for purposes of distribution, with "the formula for division" being made "at the time of the decree." 13 Kan. App. 2d at 316. This is consistent with K.S.A. 60-1610(b)(1), which states the divorce "decree shall divide the real and personal property of the parties, including any retirement and pension plans." This statute confers jurisdiction to divide the marital property, not to delay the division indefinitely.

Therefore, although district courts have broad discretion to adjust the property rights of parties to a divorce action, such discre-

tion extends only to actually dividing the property. As John argues: "Finality is required. A court may not defer making a decision." The district court in this case abused its discretion by refusing to enter a final order dividing the marital property as required by statute.

John also contends the reservation of jurisdiction violated the Equal Protection Clause of the Fourteenth Amendment to· the United States Constitution. He argues "the decision is void because it only was applied to the male party." The issue is moot because the district court was without jurisdiction to delay the division of property as it did. See *Smith v. Martens*, 279 Kan. 242, 244-45, 106 P.3d 28 (2005). John also did not argue the equal protection issue below and constitutional issues raised for the first time on appeal are not properly before this court. See *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 325, 64 P.3d 372 (2003).

Accordingly, the decision of the district court to reserve jurisdiction to consider at some future date division of a nonexistent retirement plan is reversed.

Reversed.