NOT DESIGNATED FOR PUBLICATION

No. 112,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ROSE MEDILL MOORE,
*Appellant*,

and

LYLE VINCENT MOORE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; NEIL B. FOTH, judge. Opinion filed September 11, 2015. Reversed.

*Ronald W. Nelson* and *Ashlyn L. Yarnell*, of Ronald W. Nelson, PA, of Lenexa, for appellant.

*Peggy S. Bisping* and *L. Franklin Taylor*, of Hubbard, Ruzicka, Kreamer & Kincaid L.C., of Olathe, for appellee.

Before MALONE, C.J., HILL and BUSER, JJ.

BUSER, J.: This is an appeal from an order in a divorce case requiring Rose Medill Moore to pay Lyle Vincent Moore a money judgment in the amount of $42,946.54. This sum represents a portion of Lyle's share of Rose's retirement benefits awarded to him under the division of property in the divorce decree. Lyle's share was unpaid when he filed an agreed-upon qualified domestic relations order (QDRO) with the district court to enable him to receive his share of Rose's future retirement benefits. Rose contends the

1

district court erred when it held she also owed Lyle $42,946.54 for his share of the past due retirement benefits that were not paid prior to Lyle's submission of the QDRO. We conclude that Rose's appeal has merit. Accordingly, we reverse the district court's order.

FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 2000, Rose and Lyle were divorced in a bifurcated proceeding, and on October 30, 2001, the district court approved their separation agreement. The separation agreement is not in the record, but it is uncontroverted that the parties agreed to equally divide their respective retirement pensions. Neither party was receiving retirement benefits at the time of the property division.

At the time of the divorce, Rose was a public school teacher. By August 2010, however, Rose had retired and was receiving benefits from the Kansas Public Employees Retirement System (KPERS). During this time period, Lyle was a staff attorney for the United States Department of Agriculture and apparently had not retired.

At some point after Rose retired, she and Lyle executed and submitted for filing two agreed-upon orders to effectuate the previously ordered division of their retirement benefits. The first order was submitted by Rose and was entitled "Court Order Acceptable for Processing" by the federal government (COAP). This agreed-upon order directed the federal government to divide Lyle's federal retirement benefits equally and pay a 50% share to Rose in keeping with the divorce decree. This COAP is not at issue in this appeal.

The second agreed-upon order—which is the subject of this appeal—was submitted by Lyle and was a QDRO. This order directed KPERS to equally divide Rose's retirement benefits and pay a 50% share to Lyle as provided in the divorce decree. Both the COAP and the QDRO were approved and filed by the district court on August 9 and

2

10, 2012, respectively. There was no hearing. Not surprisingly, neither party appealed from the district court's entry of the COAP or QDRO.

Notably, the QDRO relating to the division of Rose's KPERS benefits provided that the payments to Lyle would start "[o]n the next benefit payment date after receipt of this order." Of particular relevance to this appeal, however, when the QDRO took effect, Rose had already received an undivided amount of KPERS benefits, which included Lyle's 50% share valued at $42,946.54.

On August 6, 2013, Lyle initiated the present litigation by filing a motion in the divorce case seeking his 50% share of the KPERS benefits paid to Rose *before* the August 10, 2012, QDRO took effect. On November 21, 2013, the district court held a hearing on Lyle's motion. Neither party presented evidence. The district court asked for legal memoranda and took the matter under advisement.

Rose argued in her memorandum that the division of property became dormant in 2006 and was extinguished in 2008 by operation of the Kansas dormancy statute, K.S.A. 2014 Supp. 60-2403. Rose justified the continuing viability of the QDRO and COAP by contending that neither party had raised "the affirmative defense of an extinguished judgment" to entry of the agreed-upon orders. Rose argued: "Because the parties entered an agreed order providing for how their previously extinguished judgment could be enforced, the extinguished judgment cannot be enforced independent of their agreement." Rose argued further:

> "In this matter, the Court does not have the power to change the [parties'] agreements on how they agreed to revive their rights. The parties had years of opportunity to fully revive their judgments, but failed to do so. While the parties both possessed extinguished judgments, they negotiated a new agreement reflecting what they decided would be their enforceable rights—limited to distribution of yet-to-be-paid benefits from the other party's pension program. They did not include in their negotiated

3

agreement any reservation of a right to seek previously paid benefits and they did not agree to revive the entirety of their previous judgments against each other. While the division of the retirement accounts payable through the pension administrator was revived, the ability to seek a judgment for payments already received was never contemplated—and remains an extinguished judgment. This Court cannot now intervene and enforce retroactive obligations on either party that were due prior to the filing of the division orders, which are not specifically provided for in their agreement."

For his part, Lyle stated in his memorandum that the 2001 division of property was a judgment under K.S.A. 60-254(a): "A final determination of the rights of the parties' in an action." Lyle also observed, quoting our unpublished opinion *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835 (Kan. App. 2012) (unpublished opinion), that the QDRO was "'merely the ministerial avenue'" to enforce the division of property.

As these positions indicate, Lyle essentially agreed with Rose that the division of property had been extinguished. But in argument before the district court, which preceded the filing of their memoranda, Lyle's counsel acknowledged:

"It was our position that the entry of the QDRO[ and COAP] did, you know, basically by agreement allow the parties to negotiate under the original terms of the decree, which our client is entitled to then what appears to be $[42,946.54] that Ms. Moore received because of her early pay status."

Lyle's acknowledgement of the agreement made in 2012 between Rose and him was also noted by his counsel, "Our client understood that [Rose and Lyle] had agreed in 2012 to enter [this QDRO and COAP]." In memoranda filed later with the district court, however, Lyle markedly changed course and argued that both the QDRO and the COAP were void due to extinguishment of the judgment dividing the retirement benefits. Lyle even

4

suggested that the district court could vacate the QDRO and the COAP, so "[n]either party would benefit from the extinguished Order to the detriment of the other."

On May 23, 2014, the district court filed its memorandum decision. The court rejected any notion that the division of property memorialized in the divorce decree was a judgment. The district court emphasized that all property is marital property before the division, calling this "the cornerstone of Kansas divorce law." The district court explained:

> "Both spouses have a vested property interest in all assets at commencement of the action and merely await a determination of the extent of that interest to be determined and stated in the decree. Upon being awarded any portion of a particular marital asset by decree, a spouse's vested property interest in that asset remains of the same character as it was on the date of filing. It does not suddenly revert back to property of the spouse whose name it is in with the other spouse having to pursue execution of judgment to recover their previously vested property interest. Rather, the decree only further cements a spouse's ownership interest in that awarded property. Put another way, a spouse does not need a judgment against property they already own."

The district court also stated that the Kansas dormancy statute, K.S.A. 60-2403, applies only to money judgments, and not to the division of property in a divorce case:

> "The parties' interests in each other's pension are not money judgments. [Rose's] theory would reduce a court's division of assets by decree to a series of counteracting 'judgments' that each spouse would then be bound to 'execute' on. [Rose's] theory is not consistent with Kansas' concept of marital property. If it were the law or actually put into practice it would create illogical, unjust results, and basically chaos."

The district court noted that a "Journal Entry of Judgment filed October 30, 2001" (journal entry dividing property) had stated: "'[T]he Court reserves jurisdiction over this matter in order to enter such additional orders as may be necessary with regard to the

KPERS division.'" The district court's appearance docket shows such a journal entry was filed, but it is not in the record.

In any event, the district court concluded that since Lyle "owned a percentage of any KPERS benefits to be paid out upon the retirement of [Rose] as his sole and separate property," and since the district court "still has jurisdiction over division of the KPERS pension under the stated terms of the Journal Entry of Judgment as well as the QDRO," it could order a money judgment of $42,946.54 against Rose for the amount she has been "unjustly enriched." That money judgment was entered against Rose.

Rose appeals.

DISCUSSION

On appeal, Rose contends the district court erred by failing to treat the division of property as a judgment subject to extinguishment under the Kansas dormancy statute, K.S.A. 60-2403. She also argues that where "parties reach a new agreement, as they did in this case, the Court is bound by the language of the parties' agreement." Lyle again concedes that the division of property was a judgment. He does not continue to suggest, however, that the QDRO and the COAP were void due to extinguishment. Instead, he asks us to affirm the money judgment on the theory that the district court retained jurisdiction from the division of property. Our court exercises unlimited review over questions of statutory interpretation and jurisdiction. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010); *Casey v. Plake*, 45 Kan. App. 2d 99, 102, 244 P.3d 689 (2010).

The district court cited no authority for its theory that a district court divides marital property without actually entering judgment. On the other hand, the Kansas Supreme Court has directly stated, "the division of property made by a trial court in a

6

divorce is a judgment." *Bank IV Wichita v. Plein*, 250 Kan. 701, 706, 830 P.2d 29 (1992). In this regard, Lyle and Rose agree that a judgment is simply a "final determination of the parties' rights in an action." K.S.A. 2014 Supp. 60-254. We agree with the parties and conclude that the district court erred in its legal conclusion that the division of property—specifically Rose and Lyle's retirement benefits—was not a judgment. Dividing the marital property is a judgment, a final determination of the parties' interests in the marital estate.

The district court also erred when it held K.S.A. 2014 Supp. 60-2403 applies only to money judgments. This dormancy statue applies to "any judgment in any court of record in this state." K.S.A. 2014 Supp. 60-2403(a)(1). Since K.S.A. 2014 Supp. 60-2403 "speaks of 'any judgment' of any court of record in this state," it "does not limit its application to a money judgment." *Plein*, 250 Kan. 701, Syl. ¶ 2.

Under ordinary circumstances, then, the division of Rose and Lyle's marital property, in particular their retirement benefits from individual retirement plans, was also subject to dormancy. K.S.A. 2014 Supp. 60-2403(a)(1) provides:

> "Except as provided in subsection (b) or (d), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so."

7

In short, "pursuant to K.S.A. 60-2403, judgments grow dormant in five years, if not enforced by execution, garnishment or proceeding in aid of execution; and, if not revived, as provided in K.S.A. 60-2404, such dormant judgments become absolutely extinguished and unenforceable two years thereafter." *Long v. Brooks*, 6 Kan. App. 2d 963, 966, 636 P.2d 242 (1981).

K.S.A. 2014 Supp. 60-2403 provides two exceptions to this general rule. Subsection (b) deals with judgments for the support of a child. This subsection is inapplicable to the facts of this appeal. The second exception provides:  "The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." K.S.A. 2014 Supp. 60-2403(c). Neither party in the district court or on appeal argues that this subsection applies to the facts of this case.

Given the sparse record on appeal, and the arguments and concessions of the parties, we are persuaded that the dormancy statute, K.S.A. 60-2403 applied and there was no exception to the dormancy statute. The division of property was, therefore, extinguished in October 2008.

Under the unique facts of this case, however, that does not end the legal analysis. The next question presented is:  Since the dormancy statute applied, did the district court have jurisdiction or authority to order Rose to pay to Lyle his share of her KPERS retirement benefits that she received prior to the execution of the QDRO? And if the district court had jurisdiction, was the award of $42,946.54 proper given the terms of Rose and Lyle's agreed-upon orders?

Rose contends the district court "had no jurisdiction to pursue [the KPERS] payments made prior to the entry of the [QDRO], and erred in extending its authority to

8

do so." Lyle suggests the district court had continuing jurisdiction, and he asks this court to affirm the money judgment in his favor.

"Under the Kansas Constitution, district courts 'have such jurisdiction in their respective districts as may be provided by law.' Kan. Const. art. 3, § 6. Hence, it is the legislature which sets the extent of district court jurisdiction." *In re Marriage of Crane*, 36 Kan. App. 2d 677, 681, 143 P.3d 87 (2006). Since the analysis turns on statutory interpretation, our review is again unlimited. See *Casey*, 45 Kan. App. 2d at 102.

The district court cited the marital property statute, K.S.A. 2014 Supp. 23-2801, and marital property only exists until the "extent of the vested interest" is "determined and finalized by the court, pursuant to K.S.A. 2014 Supp. 23-2802," *i.e.*, until the division of property. K.S.A. 2014 Supp. 23-2801(b). Thus, "although district courts have broad discretion to adjust the property rights of parties to a divorce action, such discretion extends only to actually dividing the property." *In re Marriage of Crane*, 36 Kan. App. 2d at 682-83. A district court may not retain jurisdiction to divide a pension plan not in existence at the time of the divorce, for example. 36 Kan. App. 2d 677, Syl. ¶ 4.

In the present case, the KPERS plan was in existence at the time of the divorce, and so the district court had jurisdiction over it when it filed the journal entry dividing the property. The district court also appropriately reserved jurisdiction to make the division of the KPERS benefits based on the formula established at the time of the decree. See *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 316, 769 P.2d 678 (1989). The KPERS division, however, was extinguished by the time the district court entered the money judgment against Rose. No additional orders were necessary with respect to that division or even possible. "Once a judgment grows dormant . . . and is not revived pursuant to K.S.A. 1990 Supp. 60-2404, it becomes absolutely extinguished and unenforceable." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 1, 815 P.2d 97 (1991); *In re Marriage of Smith*, 2012 WL 1649835, at *1 (where our court considered a motion to enforce an extinguished division

9

of property.) We noted that "once the dormancy exceeded the time within which it could be revived," there was "nothing to enforce." 2012 WL 1649835, at *5.

Yet, in 2012—after the judgment dividing the retirement benefits was extinguished—Rose and Lyle enlisted the district court's jurisdiction to issue mutually agreed-upon orders providing for the receipt of a 50% share of each other's retirement benefits and to allow them to obtain a 50% share of each other's future retirement benefits. In this regard, both parties have acknowledged that Lyle's motion to the district court seeking a QDRO and Rose's motion seeking a COAP were the result of negotiations which yielded a mutual agreement.

At the hearing on Lyle's motion seeking his share of $42,946.54 in Rose's KPERS benefits, Rose informed the district court, "we agreed to entry of the [COAP] to divide the federal portion. We also agreed to the [QDRO] dividing [the KPERS benefits] forward." In a written memorandum, Rose expounded: "While the parties both possessed extinguished judgments, they negotiated a new agreement reflecting what they decided would be their enforceable rights—limited to distribution of yet-to-be-paid benefits from the other party's pension program." Similarly, Lyle's counsel acknowledged the mutual negotiations stating, "Our client understood that [he] had agreed in 2012 to enter [the QDRO and COAP]. Then again, "It was our position that the entry of the QDRO[ and COAP] did, you know, basically by agreement allow the parties to negotiate under the original terms of the decree."

Not surprisingly, given this mutual agreement in 2012, neither Rose nor Lyle raised any affirmative defense or objection that the 2001 judgment dividing marital property was extinguished. And neither party challenged the district court's jurisdiction or appealed the district court's signing and filing of the QDRO and COAP to effectuate payment of the retirement benefits, in keeping with the parties' agreement.

10

We are persuaded that Rose and Lyle, with eyes wide open, mutually agreed in 2012 to give effect to their extinguished judgments by presenting contracts, in the form of agreed orders, to the district court to allow each party to obtain a share of the other's retirement benefits. Agreed orders are generally interpreted as contracts. See *Wells Fargo v. Cherryland* (*On Rem*), 300 Mich. App. 361, 386, 835 N.W.2d 593 (2013); *In re Estate of Woodroffe*, 742 N.W. 2d 94, 106 (Iowa 2007). Moreover, "[i]t has long been held that contracts, including those governing property settlement rights in a divorce, are to be liberally interpreted to carry out the intention of the persons making them." *In re Marriage of Traster*, 301 Kan. 88, Syl. ¶ 8, 339 P.3d 778 (2014). Accordingly, by signing and filing the COAP and QDRO, the district court was not implementing the terms of the divorce decree, but it was appropriately exercising its jurisdiction to effectuate the contact made by Rose and Lyle to share 50% of each other's future retirement benefits.

The question then becomes, in addition to Rose's agreement to pay a 50% share of her future KPERS benefits to Lyle, did the terms of the QDRO also provide for the payment to Lyle of $42,946.54 of Rose's KPERS retirement benefits earned *prior to* the filing of the QDRO? This is a matter of contract interpretation.

The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

Although the QDRO provided that Lyle, "shall receive from the Plan a fifty percent (50%) share of the Marital Portion of [Rose's] monthly benefits from the Plan," it only ordered payments to start "[o]n the next benefit payment date after receipt of this order." Rose maintains the QDRO was limited in scope and did not grant the district court authority beyond its own terms. Her point is sound. "The court's function is not to make another contract for the parties. Its function is to enforce the contract as made."

11

*Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, Syl. ¶ 5, 13 P.3d 351 (2000). Without language authorizing a retrospective division of the KPERS benefits, the QDRO did not support the money judgment against Rose.

We conclude the language is plain, unambiguous, and without any need for interpretation. The QDRO memorializing the parties' agreement provided for the payment of *future* retirement benefits, not *past* retirement benefits. Accordingly, we hold the district court erred in awarding Lyle a money judgment of $42,946.54.

Reversed.